NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| MICHAEL DUKE REEVES, | : | Civil Action No. 18-14061 (JMV/MF) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| MICHAEL L. HEMSLEY, M.D., *et al.*, | : | |
| Defendants. | : | |

**VAZQUEZ, District Judge:**

## I.      INTRODUCTION

Plaintiff Michael Duke Reeves, proceeding *pro se*, seeks to bring a federal civil rights complaint.  (*See* Am. Compl., DE 3.)   At this time,[1] the Court must review Mr. Reeves' pleading, pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

For the reasons set forth below, Reeves' 42 U.S.C. § 1983 deliberate indifference to medical needs claim may proceed as against Defendant Nurse Karen Scheidewig only.   The following claims are dismissed with prejudice: (1) all of Reeves' current civil rights claims against Defendant Immigration and Customs Enforcement i/p/a Immigration Customs Enforcement ("ICE"); and (2) Reeves' violation of Health Insurance Portability and Accountability Act ("HIPAA") claim, as against all defendants.   All other claims are dismissed without prejudice.

---

[1]   The Court previously granted Mr. Reeves leave to proceed *in forma pauperis* and ordered the Clerk of the Court to file his complaint.   (DE 4.)

The Court will also now address two other pending applications filed by Mr. Reeves: (1) his motion to amend his pleading to assert additional tort claims against ICE (at DEs 9 and 12); and (2) a letter application requesting that the undersigned recuse himself from this matter (at DE 15). For the reasons explained *infra*, both applications are denied.

## II. REEVES' RECUSAL APPLICATION

Preliminarily, the undersigned notes that I also presided over Mr. Reeves' separate habeas action challenging his ongoing immigration detention under 28 U.S.C. § 2241, *Reeves v. Green*, Civil. No. 18-15063. On April 12, 2019, I issued a final order and opinion denying habeas relief to Reeves in that case.[2] Shortly thereafter, Reeves, on or about May 13, 2019, filed an application requesting that I recuse myself from the present civil action "due to [a] conflict of interest." (DE 15.) Reeves avers that there are "interrelated" issues between this case and his § 2241 matter, and thus, because I "already sided with [the] defendant[s] in [his] habeas action[, I am] likely to side with the [defendants] again in [this action]." (*Id.*) Although Reeves expressly notes that "[I am] a very ethical person[,]" he nonetheless "feel[s] that [his] interest will be better served by a different District Judge." (*Id.*)

A determination regarding recusal lies within the sound discretion of the judge managing the matter. *United States v. Wilensky*, 757 F.2d 594, 599-600 (3d Cir. 1985). Two federal statutes govern the circumstances in which a judge should recuse himself. The first statute, 28 U.S.C. § 455, provides, in pertinent part, that: "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably he questioned." *Id.* at § 455(a). "The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be

---

[2] Mr. Reeves' appeal of that decision is now pending in the Third Circuit.

questioned." *Allen v. Parkland Sch. Dist.*, 230 F. App'x 189, 193 (3d Cir. 2007) (citation omitted). The second, 28 U.S.C. § 144, mandates that a judge recuse himself "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." *Id.* at § 144. A "substantial burden is imposed on the party [seeking recusal under § 144] to demonstrate that the judge is not impartial." *Frolow v. Wilson Sporting Goods Co.*, No. 05-4813, 2011 WL 1337513, at *2 (D.N.J. Apr. 7, 2011) (citation omitted). "In satisfying this burden, the movant must make a three-fold showing: (1) the facts must be material and stated with particularity; (2) the facts must be such that, if true they would convince a reasonable man that a bias exists; (3) the facts must show the bias is personal, as opposed to judicial, in nature." *Id.* (citing *United States v. Thompson*, 483 F.2d 527, 528 (3d Cir. 1973)).

Reeves presents no credible basis for recusal. To be clear, the fact that I denied habeas relief to Reeves in his separate § 2241 matter, standing alone, does not require my disqualification from this action; this remains true even if Mr. Reeves' two cases have some factual overlap and even if Mr. Reeves is dissatisfied with my final decision in his other "interrelated" matter. The reality of the judicial process is that at least one party in nearly every case walks away from the courthouse dissatisfied with a judge's legal rulings; Reeves' habeas case is no exception. The role of this Court is to resolve lawsuits in a fair, objective, and impartial manner, in accordance with the law, and based on the facts before it. That is precisely what the undersigned did in Reeves' § 2241 matter and that is also what the undersigned will do in Reeves' present case.

Again, Reeves appears to seek my recusal in the present case simply because I ruled against him in his prior habeas matter. While Reeves may disagree with my legal rulings in his § 2241 action, he has not presented any evidence or other objective information which even marginally

suggests that I have any personal prejudice against him or other biases that would impugn my ability to dispassionately rule on his claims in this matter. Instead, Reeves – in his own recusal application – expressly notes that I am "a very ethical person." (DE 15.) Mr. Reeves' recusal request is accordingly denied. The Court now turns to the matter at hand.

## III. BACKGROUND

Reeves' present civil action arises out of the allegedly unconstitutional actions committed by various state and federal officials against him since June 25, 2018, *i.e.*, the date on which his present period of immigration detention at Bergen County Jail ("BCJ") began. Reeves' pertinent pleading, *i.e.*, his October 19, 2018 amended complaint,[3] formally identifies the following defendants: (1) Michael L. Hemsley, M.D.; (2) Corizon Health; (3) Bergen County Jail Medical; (4) New Bridge Medical Center f/k/a Bergen Regional Medical Center ("New Bridge"); (5) Nurse Karen Scheidewig; (6) Nurse Nia Mazzacca; (7) Nurse Stacey Melson; (8) Board of Medical Examiners; (9) ICE; (10) ICE officer Michael Kolarcit; (11) Sheriff Michael Saudino; (12) Executive Undersheriff George Euono; (13) Undersheriff Robert Colaneri; (14) Undersheriff Joseph Hornyak; (15) Undersheriff Brian Smith; (16) Warden Steven Ahrendt; (17) Lieutenant Paul Allegretta; (18) Sergeant Romero; (19) Officer John Thompson; (20) Officer S. Hajen; (21); ABC Entities 1-10; (22) John Does 1-10; and (23) Jane Does 1-10. (DE 3 at 1-2.)

On June 25, 2018, Reeves was arrested by certain unidentified ICE agents. Reeves claims that those agents dislocated and otherwise injured his right shoulder during that arrest. (*Id.* at 5.) Reeves was immediately thereafter taken to an unnamed medical facility where doctors performed a surgical procedure that failed "to relocate his shoulders [sic]." (*Id.*) "He was[, at that time,] prescribed follow-up testing and evaluation on suspicion of fractured rotator cuff and torn

---

[3] The Court accepts the factual allegations in that pleading as true for purposes of this screening.

labrum[,]" and his right arm was placed into a sling. (*Id.* at 5-6.) Reeves was then transported to BCJ, at which point "a nurse believed to be Nurse Scheidewig" confiscated his sling notwithstanding that "the need to keep his should protected and supported was [both] obvious" and "noted in the release[] instructions" provided to BCJ. (*Id.* at 6, 10.) Between June 25, 2018 and June 28, 2018, Reeves made numerous requests to have his sling returned; all such requests were ignored. (*Id.* at 6.) Reeves claims that the confiscation of his sling left his right arm dangling and unsupported, and that this resulted in him experiencing additional pain and further aggravating his right shoulder injuries. (*Id.* at 10.)

On June 29, 2019, Reeves' right shoulder was again dislocated.[4] (*Id.* at 6.) "He spent several hours in excruciating pain before he was taken to New Bridge Medical Center[,]" where Dr. Nicholas Dalaney performed a second surgery, that again, failed to properly "relocate" his shoulder. (*Id.*) Unidentified individuals at New Bridge ordered testing and a follow up visit in two weeks. (*Id.*) Mr. Reeves, however, was not taken back to New Bridge "until about 82 days later, [on] September 17, 2018." (*Id.*) His arm remained in a sling during this 82-day period. (*Id.* at 11.)

During Reeves' follow-up appointment at New Bridge on September 17, 2018, Dr. Dalaney recommended that Reeves "have a MRI Arthrogram to evaluate for cuff, labrum and glenoid injury." (*Id.* at 6.) When Reeves returned to BCJ later that day, he requested a copy of his medical records from Bergen County Jail. He claims that Dr. Hemsley and Nurse Melson, at that

---

[4] Reeves' assertion that his right shoulder was "dislocated" for a second time on June 29, 2018 appears, to the Court at least, to be inconsistent with his claim that doctors performed an unsuccessful surgery on June 25, 2018 to repair his already dislocated shoulder. The Court accordingly presumes that Reeves is instead alleging that his shoulder condition was further aggravated – not re-dislocated – on June 29th, and that but-for the lack of a sling between June 25th and 29th, his already-dislocated shoulder would not have been further aggravated such that he required urgent medical care and surgery to address that injury on June 29th.

time, "manufactured fake medical records and falsified information."[5]  Reeves avers that "Dr. Hemsley altered the records to avoid liability [because he] did not want to be accountable for not providing any therapy as had been ordered."  (*Id.* at 7-8.)  On October 8, 2018, "Reeves notified Warden Ahrendt about the crime involving falsifying of medical records and forgery."  (Id. at 6.)  On the following day, "Warden Ahrendt informed Mr. Reeves that the matter [was referred to BCJ] Internal Affairs for investigation and appropriate action."  (*Id.* at 6.)

On October 9, 2018, Reeves was taken New Bridge for magnetic resonance imaging ("MRI") of his right shoulder area.  (*Id.*)  The MRI revealed degenerative arthritis in Reeves' right shoulder, a Hill-Sachs deformity, a torn interior labrum, partial tear in his bicep tendon, and a torn rotator cuff.  (*Id.* at 7.)  On October 15, 2018, Mr. Reeves again met with Dr. Dalaney. (*Id.*)  During that meeting, Dr. Dalaney indicated that Reeves needed to have a third surgery, but first needed to complete doctor-prescribed therapy.  (*Id.*)

Reeves further claims that he "was *tortured* inside the medical department [on July 9, 2018] by [] Nurse Mazzacca, Officer John Thompson[, and Officer] S. Hajen . . . under the direction of [Dr. Hemsley]" when he was placed in a dry cell, *i.e.*, a room without plumbing, for overnight monitoring after he complained about extreme pains from constipation.  Reeves claims that he was placed in that solitary space to confirm that he was constipated, but also because the defendants "wanted to teach him a lesson."  (*Id.* at 8.)  When he "complained about [this] inhumane treatment" to Nurse Mazzacca, Officer S. Hajen – who "was not assigned to the medical unit" and "was only there to chat with the nurse" – screamed at him to "fucking shut up" because

_____

[5] Reeves has appended copies of the purportedly authentic medical records he received directly from New Bridge and the purportedly falsified medical records record he received from BCJ to his amended complaint as exhibits A2 and A1, respectively.  As will be discussed further, *infra*, the substantive information in both sets of documents appears to be the same.

"he was speaking too loudly to [her]." (*Id.* at 8-9.) Mazzacca and Hajen then proceeded to taunt him with gestures. Reeves notes that his claim of constipation was verified because he was unable to defecate while confined to that cell after being given large quantities of laxatives. (*Id.* at 9.)

Reeves also complains that the BCJ officials frequently disregarded and were otherwise indifferent to his complaints and grievances. For example, When Reeves complained to Hemsley about his time in the dry cell on July 9th, he was ignored. (*Id.*) Officer John Thompson likewise destroyed five separate grievances that Reeves submitted about the dry cell incident, as well as two other grievances that Reeves previously submitted on July 1, 2018 "about poor medical services." (*Id.*) Thompson and Sergeant Romero also ignored Reeves on July 2, 2018 when he, for unspecified reasons, requested their help. (*Id.*) In addition, Reeves also submitted a formal grievance to unidentified individuals on June 28, 2018 "complaining about extreme pain and constipation" that was "mostly ignored." (*Id.* at 6.)

In addition, Reeves alleges that he was moved "out of the low security dorm South 7 [to] high security in [the] South 4 [area of BCJ]" in retaliation for "fil[ing] a grievance [on July 26, 2018] complaining about the cover-ups in the medical department." (*Id.* at 9.) He claims – without any additional context or basis – that "all of the Defendants" are responsible for this purportedly impermissible action. (*Id.*)

Reeves further asserts that Dr. Hemsley violated his HIPAA right to medical privacy when he "discussed Mr. Reeves' entire medical history" in front of three other BCJ detainees. (*Id.* at 8.) Reeves notes that HIPAA violations are common in BCJ's medical unit because it processes four detainees at a time, and thus, after a doctor consults with one detainee, "the other [three] detainees sit there in the open and listen." (*Id.*) Reeves avers, among other things, that the foregoing facts demonstrate that defendants acted with deliberate indifference to his serious

medical needs.

As the above summary indicates, many of the specific defendants named in Reeves' amended complaint appear to have had little to no direct involvement with Reeves. Indeed, Reeves' pleading fails to detail any incident or include any other specific facts which tie defendants New Bridge, Board of Medical Examiners, ICE Officer Kolarcit, Sheriff Saudino, Executive Undersheriff Euono, Lieutenant Allegretta, or Undersheriffs Colaneri, Hornyak, and Smith (collectively, the "Lack of Factual Nexus Defendants") to any of the incidents, conduct, and harm complained of therein.

Reeves claims, in sweeping fashion, that he "brings [his] amended civil complaint against all [] defendants under 42 U.S.C. § 1983[.]" (*Id.* at 5.) Reeves also seeks relief under 42 U.S.C. § 1985(3). (*Id.*) This statute provides, in pertinent part, that "[i]f two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws . . . , the party so injured or deprived [by that conspiracy] may have an action for the recovery of damages . . . against any one or more of the conspirators." 42 U.S.C. § 1985(3). The Court understands Reeves to be asserting his § 1985 civil conspiracy claim against ICE only given that Reeves specifically alleges that only ICE discriminated against him because he is a "poor man from a very poor African nation" and that ICE would have treated him better if Reeves were instead white, European, or Jewish. (*Id.* at 9-10.) Reeves' amended complaint further claims entitlement to relief under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 404 U.S. 388 (1971). (*Id.* at 5.) Because a *Bivens* claim can only be asserted against a federal actor (*see infra*), the Court understands Reeves to be asserting this claim against ICE and ICE Officer Kolarcit only.

In addition to the foregoing factual and legal claims raised in Reeves' amended complaint,

Reeves also seeks leave to amend his pleading to assert additional claims against ICE for false imprisonment, false arrest, malicious prosecution, abuse of process, negligent infliction of emotional distress, and negligence. (*See* Reeves' Jan. 15, 2019 Mot. to Add New Claims; DE 9; *see also* Reeves' Feb. 11, 2019 Mot. to Add New Evidence in Supp. of Mot. to Add New Claims, DE 12 (companion motion seeking to incorporate documents appended to that filing as additional evidentiary materials in support of Reeves' proposed tort claims against ICE).)

## IV.    RELEVANT LEGAL STANDARDS

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)); *Courteau v. United States*, 287 F. App'x. 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit.

To survive the Court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint may also be dismissed for failure to state a claim if it appears "'that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner*, 404 U.S. 519, 521 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981). *Pro se* pleadings are liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).).

Reeves' motion to amend his pleading (at DE 9 and 12) is subject to similar scrutiny. Because Reeves has already amended his pleading once "as a matter of course[,]" any further amendments to that pleading require "leave of court." *See* Fed. R. Civ. P. 15. Critically, the Court may deny Reeves leave to amend based on the futility of his proposed amendments. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citations omitted). A proposed amendment is futile if it "fail[s] to state a claim upon which relief could be granted." As such, the Court's futility analysis utilizes the same "failure to state a claim" standard, detailed above, that applies when a claim is assessed under Rule 12(b)(6) and/or 28 U.S.C. § 1915(e)(2)(B)(ii). *See id.*

## V.   ANALYSIS

### a.   42 U.S.C. § 1983 and *Bivens*

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights by a state official or employee.   The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.   To obtain relief under Section 1983, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a person acting under color of state law.   *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (noting that Section 1983 does not provide substantive rights; rather, it provides a vehicle for vindicating violations of other federal rights).

Likewise, under *Bivens*, a plaintiff may have a cause of action for money damages where a federal officer, "acting under color of [federal] authority[,]" commits a constitutional tort. *Bivens*, 403 U.S. at 389.   In order to state a claim under *Bivens*, a plaintiff must establish: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.   *See Mahoney v. Nat'l Org. For Women*, 681 F. Supp. 129, 132 (D. Conn. 1987) (citing *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978)).   *Bivens* claims are brought against individual federal officers.   *See Bivens*, 403 U.S. at 394-96.   A plaintiff may not bring a *Bivens* suit against, among others, federal agencies.   *See FDIC v. Myer*, 510 U.S. 471, 486 (1994).

Critically, "vicarious or supervisor liability in inapplicable to *Bivens* and § 1983 suits." *Iqbal*, 129 S. Ct. at 1948. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948; *accord Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 680 (E.D. Pa. 2018) ("[T]o prevail in a civil rights action, a plaintiff must demonstrate that the defendant was personally involved in the alleged wrongful conduct"); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990) ("Only those defendants whose inactions or actions personally caused [Plaintiff's] injury may be held liable under § 1983."). Personal involvement can be shown through allegations, made with "appropriate particularity," of personal direction or of actual knowledge and acquiescence. *Kornegey*, 299 F. Supp. 3d at 680 and at 680 n.17 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

**b. Reeves' amended complaint is dismissed as against all Lack of Factual Nexus Defendants**

As noted above, Reeves' amended pleading fails to detail any incident or other specific facts which tie the Lack of Factual Nexus Defendants, *i.e.*, New Bridge Medical Center, Board of Medical Examiners, ICE Officer Kolarcit, Sheriff Saudino, Executive Undersheriff Euono, Undersheriff Colaneri, Undersheriff Hornyak, Undersheriff Smith, and Lieutenant Allegretta, to any of the incidents, conduct, and harm complained of therein. Because Reeves fails to adequately allege that any of these defendants were personally involved in the wrongful conduct he complains of, any and all such claims which Reeves purports to assert against these defendants – including under § 1983 and under *Bivens* – are dismissed without prejudice. *Iqbal*, 129 S. Ct. at 1948; *Kornegey*, 299 F. Supp. 3d at 680.

**c. All of Reeves' present claims against ICE are dismissed with prejudice**

Reeves' amended complaint asserts claims against Immigration and Customs Enforcement

under *Bivens*, Section 1983, and 42 U.S.C. § 1985(3). (*See*, *generally*, DE 3.) These claims are all dismissed with prejudice. Claims brought against a federal agency, like ICE, are effectively claims against the United States. *Ky v. Graham*, 473 U.S. 159, 165-66 (1985). The United States – and by extension, ICE – has sovereign immunity except where it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). The United States' waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Mitchell*, 445 U.S. at 538; *accord Johnson v. U.S. Attorney's*, No. CIV.A 10-1643, 2010 WL 2991409, at *2 (E.D. Pa. July 27, 2010).

Importantly, Congress has never waived sovereign immunity for constitutional tort claims, *e.g.*, *Bivens* claims, against the United States, its agencies, or employees sued in their official capacity. *FDIC*, 510 U.S. at 478; *Kentucky v. Graham*, 473 U.S. 159, 166-68 (1985); *Belt v. Federal Bureau of Prisons*, 336 F. Supp. 3d 428, 436 (D.N.J. 2018) ("A *Bivens* action cannot be brought against a federal agency . . . since such claims are plainly barred by the doctrine of sovereign immunity."). Congress has likewise not waived sovereign immunity for § 1985 civil conspiracy claims. *Johnson*, 2010 WL 2991409, at *2 (citing, *inter alia*, *Davis v. DOJ*, 204 F.3d 723, 726 (7th Cir. 2000); *Biase v. Kaplan*, 852 F. Supp. 268 (D.N.J. 1994)). Reeves' *Bivens* and § 1985 claims against ICE are therefore dismissed with prejudice. *See Belt*, 336 F. Supp. 3d at 436 (dismissing, with prejudice, plaintiff's *Bivens* claim against federal agency at screening, based on sovereign immunity); *accord Peynado v. Sabol*, No. CIV.A. 1:09-CV-0355, 2010 WL 598682, at *3 (M.D. Pa. Feb. 17, 2010) ("As a result of sovereign immunity, this court lacks subject matter jurisdiction over most claims against the United States and its agencies, including ICE.") (citing *FDIC*, 510 U.S. at 483-86).

Any such claims Reeves is asserting against ICE under 42 U.S.C. § 1983 are also dismissed

with prejudice. As stated in the statute itself, § 1983 applies only in cases of persons acting under color of *state* law. *Id.* (emphasis added). It is accordingly well-settled that liability under § 1983 will not attach for actions taken under color of *federal* law. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001) (emphasis added); *see also Bethea v. Reid*, 445 F.2d 1163, 1164 (3d Cir. 1971). Any actions taken by ICE against Reeves would have been under the authority of federal law, not state law. *See Johnson*, 2010 WL 2991409, at \*2. Reeves accordingly cannot state a claim against ICE under § 1983, and this claim is also dismissed with prejudice.

### d. Reeves' motion to amend his complaint to add additional tort claims against ICE is denied

Reeves also seeks leave to amend his pleading to assert additional claims against ICE for false imprisonment, false arrest, malicious prosecution, abuse of process, negligent infliction of emotional distress, and negligence. (*See* DEs 9, 12.) Reeves, by way of that motion, avers that he was "seriously injured" by ICE agents when he was arrested on June 25, 2018, and further claims that ICE had no valid basis to arrest and detain him on that date. (*See* DE 9.) Reeves' motion, however, fails to specify the legal basis – statutory or otherwise – under which he may bring the proposed tort claims against ICE, who, again, enjoys the benefit of sovereign immunity. *Mitchell*, 445 U.S. at 538. The Court will accordingly presume that Reeves is attempting to bring these claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, which "operates as a limited waiver of the United States's sovereign immunity." *White-Squire v. United States Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010); *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 354 (D.N.J. 2003) (concluding that the "[FTCA was] Plaintiff's sole remedy with respect to the claims asserted against [federal defendants] in their official capacities.").

Under the FTCA, a plaintiff may sue the United States "for money damages. . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission

of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(l). However, a claim "against the United States for money damages [cannot be brought in federal district court] . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and [that claim is] finally denied by the agency[.]"[6]  28 U.S.C. § 2675(a). As a result, this Court lacks jurisdiction over Reeves' FTCA-based tort claims until such time as Reeves has exhausted his administrative remedies before that agency. *See McNeil v. United States*, 508 U.S. 106 (1993); *Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995); *Bieregu*, 259 F. Supp. 2d at 355.

Reeves' motion to amend his pleading to assert additional claims against ICE for false imprisonment, false arrest, malicious prosecution, abuse of process, negligent infliction of emotional distress, and negligence is denied because there is nothing in his motion – or in any other document in the record – which indicates that Reeves has already pursued these tort claims administratively, much less that ICE rendered a final decision denying those claims. *Laoye v. United States*, 665 F. App'x 148, 149-50 (3d Cir. 2016) (agreeing that "initial *pro se* pleading was insufficient . . . [because, among other things,] it was unclear from [that] pleading whether [the plaintiff] had complied with the FTCA's notice requirements"); *accord Bieregu*, 259 F. Supp. 2d at 355 ("Plaintiff does not allege that he has exhausted his administrative remedies. Thus, Plaintiff cannot pursue a claim under the FTCA"). The Court's denial of Reeves' request to assert the foregoing tort claims against ICE is without prejudice to Reeves' ability to bring these claims in District Court upon a proper showing that he has exhausted his FTCA remedies. *Laoye*, 665

---

[6]  That final denial is to be "in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). Alternatively, "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim[.]" *Id.*

F. App'x at 150.

### e. Reeves alleges a cognizable § 1983 denial of medical care claim against Nurse Scheidewig only

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the United States Supreme Court made clear that: (1) "the government [is obligated] to provide medical care for those whom it is punishing by incarceration[;]" (2) "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment[;]" and (3) "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 103-05. Non-convicted immigration detainees, like Reeves, are afforded substantially the same protections under the Due Process Clause of the Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) ("pretrial detainees' [are protected] from 'punishment' under the Fourteenth Amendment, and convicted inmates' [are protected] from punishment that is 'cruel and unusual' under the Eighth Amendment."); *see also Adekoya II v. Chertoff*, No. 08-3994, 2009 WL 539884, at *6 (D.N.J. Mar. 4, 2009) (classifying immigration detainee as a pretrial detainee for purposes of evaluating his § 1983 medical care claims).

Reeves' § 1983 denial of medical care claim is accordingly analyzed under the *Estelle's* deliberate indifference standard. *See Covington v. Bucks County Dep't of Corr.*, No. 17-11397, 2019 WL 1418127, at *3 n.3 (D.N.J. Mar. 29, 2019) ("Without deciding whether the Fourteenth Amendment provides greater protections, the Third Circuit has found it sufficient to apply the Eighth Amendment standard set forth in [*Estelle*] when evaluating a claim for inadequate medical care by a detainee.") (citing *Banda v. Adams*, 674 F. App'x 181, 184 (3d Cir. 2017); *accord Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003); *see also Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987) ("decisions interpreting the Eighth Amendment serve as 'useful analogies' [for similar claims that instead arise under the Fourteenth

16

Amendment].") (citation omitted); *but cf. Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) ("at a minimum, the 'deliberate indifference' standard of *Estelle v. Gamble*, must be met" at an institution housing pretrial detainees).

In accordance with *Estelle* and its progeny, in order for Reeves' § 1983 inadequate medical claim to proceed past screening, he must plead sufficient facts which show that he had a serious medical need to which defendants were deliberately indifferent. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017); *Mattern v. City of Sea Isle*, 657 F. App'x 134, 138 (3d Cir. 2016). Serious medical needs include "one[s] . . . diagnosed by a physician as requiring treatment or one[s] that [are] so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Mattern*, 657 F. App'x at 139 (quoting *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). A prison official acts with deliberate indifference to those needs if he "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016) (citation omitted).

Critically, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic v. Wetzel*, 854 F.3d 209, 227–28 (3d Cir. 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)). Indeed, "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* at 227 (3d Cir. 2017) (quoting *United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). Courts accordingly afford deference to prison medical authorities in the diagnosis and treatment of patients, and "disavow

any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." *Id.* (quoting *Inmates of Allegheny County*, 612 F.2d at 762 (3d Cir. 1979)). In that respect, neither a prisoner's personal, subjective dissatisfaction with the care he has been provided, nor his disagreement with the professional judgment of trained medical staff, is sufficient to establish deliberate indifference. *See Hairston v. Director Bureau of Prisons*, 563 F. App'x. 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden County*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

Yet, "there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements." *Palakovic*, 854 F.3d at 228. "[P]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition." *Id.* (citations and internal quotations omitted). They cannot "deny reasonable requests for medical treatment . . . [when] such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" *Id.* (citing *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)). And, "knowledge of the need for medical care may not be accompanied by the intentional refusal to provide that care." *Id.* (citations and alterations in original omitted).

### (i) Application of the foregoing principles to Reeves' pleading

The factual allegations in Reeves' amended complaint demonstrate that Reeves' shoulder injury[7] is sufficiently serious for purposes of obtaining relief under Section 1983. Indeed, Reeves alleges that he underwent two unsuccessful shoulder surgeries, on June 25, 2018 and June 29,

---

[7] Insomuch as Reeves is attempting to assert a deliberate indifference claim based on any of his other purported ailments, his pleading lacks sufficient factual allegations from the which the Court can infer that any other of his medical issues were diagnosed by a physician as requiring a specific course of treatment or were so obvious in nature that a non-medical professional would readily recognize the need for a doctor's attention.

2018, and that a doctor has recommended that he undergo a third.   Reeves has also, for purposes of his § 1983 *Estelle*-based claim, pled sufficient facts showing that Nurse Scheidewig was deliberately indifferent to that serious medical need.   Again, Reeves alleges that he arrived at BCJ on June 25, 2018 with his arm in a sling, having just undergone an unsuccessful surgical procedure to his shoulder.   He claims that Scheidewig confiscated that sling immediately upon his arrival at BCJ, in spite of the obvious need to keep Reeves' shoulder protected and contrary to an express medical directive from an unidentified medical facility.   Reeves also alleges that as a result of Nurse Scheidewig's confiscation of his sling on June 25th, he further injured his shoulder in such a manner that he needed to undergo another emergency surgery four days later, on June 29, 2018. Again, a finding of constitutionally-actionable deliberate indifference is appropriate where a medical professional denies reasonable requests for medical treatment and that denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'"   *Palakovic*, 854 F.3d at 228; *see also Wilson v. Jin*, 698 F. App'x 667, 671 (3d Cir. 2017) ("Deliberate indifference . . . requires obduracy and wantonness which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk.") (internal citations and quotations omitted).   Scheidewig's alleged actions appear to fit within this framework, and as such, Reeves' *Estelle*-based § 1983 claim against her may go forward.

Reeves' pleading fails to sufficiently allege that any other defendant acted with deliberate indifference to his shoulder injury.   The Court, in so finding, stresses that Reeves' amended complaint clearly demonstrates that he received extensive medical treatment for his shoulder injury after arriving at BCJ on June 25, 2018; this fact remains true notwithstanding that much of his care was provided off-site by individuals unaffiliated with BCJ.   Indeed, Reeves expressly references four different dates on which he was taken to New Bridge Medical Center for evaluation and

treatment for his shoulder injury.    This number of off-site visits is particularly pertinent given that

Reeves had only been detained at BCJ for four months when he filed his amended complaint or on

about October 25, 2018.    Furthermore, Reeves's pleading suggests that he received prompt and

significant treatment for his shoulder, particularly when the need for emergent medical care was

at its most pressing, *i.e.*, on June 29, 2018, when Reeves was in excruciating pain after further

injuring his shoulder.    Indeed, Reeves expressly notes that he underwent shoulder surgery on that

very day.    These allegations undermine Reeves' efforts to obtain § 1983 relief under *Estelle*.    *See*

*Wisniewski v. Frommer*, 751 F. App'x 192, 194-96 (3d. Cir. 2018) (affirming Rule 12(b)(6)

dismissal of § 1983 medical care claim where "[plaintiff's] allegations confirmed that he had been

seen many times by medical providers who exercised professional judgment with respect to his

care[.]") (quotations and alterations in original omitted); *Romero v. Ahsan*, No. 13-7695, 2018 WL

6696782, at *18 (D.N.J. Dec. 20, 2018) (no constitutional violation where "the evidence before

the Court demonstrate[d] that [plaintiff] received extensive and generally prompt medical

treatment for his knee injury."); *Battle v. McGann*, No. 17-12041, 2018 WL 5263279, at *4 (D.N.J.

Oct. 23, 2018) ("In light of Plaintiff's multiple treatments and evaluations, it is apparent that the

complaint shows only a [non-actionable] difference in opinion over the course of proper medical

treatment rather than a complete denial of medical care.").

That Reeves did not return to New Bridge for additional follow-up care after his June 29,

2018 shoulder surgery until September 17, 2018 – during which time his arm remained protected

in a sling – also fails to provide a basis to find that any defendant was deliberately indifferent to

that medical need under *Estelle*.    To be clear, "prisoners do not have a constitutional right to

limitless medical care."    *Brown v. Beard*, 445 F. App'x 453, 456 (3d Cir. 2011).    Instead, "the

state is obligated to provide [prisoners with] basic health care."    *Reynolds v. Wagner*, 128 F.3d

166, 173 (3d Cir. 1997); *see also Brown*, 445 F. App'x at 455 ("[t]he Eight Amendment mandates that prisoners receive access to basic medical treatment.") (citing *Estelle*, 429 U.S. at 104); *accord Watford v. New Jersey State Prison*, No. 16-7878, 2017 WL 131562, at *4 (D.N.J. Jan. 12, 2017) (dismissing Section 1983 inadequate medical care claim where facts alleged in complaint "establish[ed] that [p]laintiff has been treated, continues to receive treatments, and may well receive his desired medication once his doctors are satisfied that such a course is warranted by the diagnostics" and further reiterating that "[p]laintiff's subjective dissatisfaction with the slow course of his treatment is insufficient to support a claim for relief for a violation of his constitutional rights."). Reeves does not sufficiently state a claim that the medical treatment he has received at BCJ was constitutionally insufficient solely because an additional doctor-recommended surgery on his shoulder was not performed in the four months after Reeves underwent his first shoulder surgery as a BCJ detainee on June 29, 2018.

For the foregoing reasons, Reeves' amended complaint fails to suggest that he received inadequate medical care for his shoulder injury from any named defendant other than Nurse Scheidewig. His pleading similarly fails to allege facts which plausibly suggest that any defendant, other than Scheidewig, was deliberately indifferent to his serious medical needs in a manner which violated Reeves' rights under the United States Constitution. The Court will accordingly dismiss Reeves' § 1983 deliberate indifference to medical needs claim as to all defendants other than Nurse Scheidewig.

**f. Reeves' claim that Dr. Hemsley and Nurse Melson falsified his medical records is controverted by the evidentiary materials that Reeves himself submitted in support of that claim**

Reeves expressly claims that Dr. Hemsley and Nurse Melson "manufactured fake medical records and falsified information" in response to his September 17, 2018 request to BCJ for his

medical records.   (DE 3 at 6-8.)   Reeves further avers that "Dr. Hemsley altered the records to avoid liability [because he] did not want to be accountable for not providing any therapy as had been ordered."   (*Id.* at 7-8.)   In addition to these limited factual allegations, Reeves also attached copies of the purportedly falsified medical records he received from BCJ and the purportedly authentic record he received from New Bridge.   (*See id.* at Exs A1 and A2.)

Insomuch as Reeves' falsification of medical records claim could otherwise give rise to liability under § 1983 – and the Court makes no such finding on that issue at this time – that claim is dismissed because the factual allegations underlying this claim are rebutted by the substantive information in the medical records Reeves appended to his pleading.   *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a [Rule 12(b)(6)] motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."); *Schreane*, 506 F. App'x at 122 ("The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to [Rule]12(b)(6).").

Reeves' assertion that medical professionals altered and/or fabricated his medical records to avoid liability is an incredibly serious accusation that the Court does not take likely. Nevertheless, having independently reviewed both set of documents, The Court finds the substantive information in both to be materially indistinguishable.   For example, contrary to Mr. Reeves' assertion (*see id.* at 7, 8), the "fabricated" medical records (*see id.* at Ex. A1, PageID: 70-74), like the "authentic" records (*see id.* at Ex. A2, PageID: 75-77), *do* state that Reeves had not yet had any physical therapy and expressly indicate that Reeves suffered from a "right shoulder instability/glenoid fracture."   (*See id.* at Ex. A1, PageID: 72.)

The Court, in short, will not countenance Reeves' efforts to accuse Helmsley and Melson of fabricating medical records based on a handful of limited conclusory factual allegations that are rebutted by the very same evidentiary materials that Reeves has appended in support of that accusation. Reeves' fabrication of medical records claim is accordingly dismissed.

### g. Reeves' HIPAA-rooted claims are dismissed with prejudice as against all defendants

Reeves also expressly claims that Dr. Hemsley, Corizon Health, and BCJ Medical Center are liable to him under HIPAA because they have violated his medical privacy rights. (DE 3 at 8.) Reeves' likewise appears to implicitly claim that these defendants are separately liable to him under § 1983 for these same acts. (*Id.* at 5.) Reeves' HIPAA-related claims are dismissed with prejudice because the disclosure of his "medical records without his permission[, even if true,] cannot form the basis for a civil rights action or a federal claim under [HIPAA]." *Voth v. Hoffman*, No. 14-7582, 2016 WL 7535374, at *7 n.6 (D.N.J. Apr. 28, 2016); *see also Kashkashian v. Markey*, 2017 WL 5518024, at *2 (E.D. Pa. Nov. 17, 2017) ("HIPAA, which deals with access to protected health information, does not provide a private cause of action and therefore is not a cognizable Fourteenth Amendment claim [against state officials under Section 1983]."); *Dade v. Gaudenzia DRC, Inc.*, 2013 WL 3380592, at *2 (E.D. Pa. July 8, 2013) (finding that Plaintiff could not bring a private action to enforce HIPAA obligations, whether through the statute itself or through § 1983); *accord Hatfield v. Berube*, 714 F. App'x 99, 105 (3d Cir. 2017) ("HIPAA does not create a private right of action for alleged disclosures of confidential medical information . . .") (internal citations omitted); *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 468 (D.N.J. 2013) ("HIPAA does not provide a private right of action to remedy HIPAA violations").

**h. Reeves' confinement to a dry cell, in the manner alleged, is not actionable under § 1983**

Reeves claims that his one-day period of confinement in a dry cell violated his constitutional rights. The Court, based on the factual allegations detailed in Reeves' pleading, cannot agree. As noted above, Reeves's "situation as an immigration detainee [is] comparable to that of a pretrial detainee[.]" *Dahlan v. Dep't of Homeland Sec.*, 215 F. App'x 2007 (3d Cir. 2007); *accord Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011) (an immigration detainee is "entitled to the same protections as a pretrial detainee.") "[W]hen pretrial detainees challenge their conditions of confinement, [courts] must consider whether there has been a violation of the Due Process Clause of the Fourteenth Amendment." *Hubbard*, 538 F.3d at 231. The Supreme Court has instructed that "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To determine whether challenged conditions of confinement amount to punishment, the "*Bell* Court mandated a pragmatic approach . . . and formulated the 'reasonable relationship' test[.]" *Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007). Under that test, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." *Bell*, 441 U.S. at 539. This inquiry considers the totality of the circumstances within a given institution. *See Hubbard*, 399 F.3d at 158 (citations omitted). Absent a showing of express intent to punish, the determination will normally turn on whether the conditions have an alternative purpose and whether the conditions appear excessive in relation to that purpose. *See id.* (citing *Bell*, 441 U.S. at 538-39 (1979)).

Reeves' placement in a dry cell for a one-day period to confirm his complaints of constipation, standing alone, does not violate the Constitution. *Gilblom v. Gillipsie*, 435 F. App'x 165, 168 (3d Cir. 2011) ("Gilblom's placement in a dry cell for the purpose of searching his

24

excrement, is not, in and of itself, problematic.").  Furthermore, the facts alleged by Reeves show that he was confined to that cell for a legitimate, non-punitive reason, *i.e.*, for overnight evaluation so that medical professionals at BCJ could determine if he was constipated.  Reeves likewise has not pled facts which show that the conditions in the dry cell were excessive in relation to that legitimate governmental interest.  *Bell*, 441 U.S. at 540.  Reeves' unsupported assertion that the defendants – in addition to the foregoing legitimate, non-punitive objective – confined him to the dry cell because they also wanted to "teach him a lesson" does not alter this analysis.  Indeed, the legitimate non-punitive reasons for putting him a dry cell – which Reeves expressly pleads in his amended complaint – demonstrate that his placement there was reasonable under the totality of the circumstances.  *See McGinnis v. Hammer*, 751 F. App'x 287, 291-92 (3d. Cir. 2018) ("conclusory allegation that [physician's assistant] denied [inmate] ibuprofen [for improper motive], rather than for the reasons apparent on the face of the complaint, fails to state a plausible claim for relief.").

Reeves' claim that his July 9, 2018 placement in the dry cell for overnight monitoring violated his constitutional rights is accordingly dismissed for failure to state a claim upon which relief can be granted.  *Gilblom*, 435 F. App'x at 167-68 (convicted prisoner's placement in a dry cell, in close proximity to his own excrement, for approximately 36 hours failed to support a viable Eighth Amendment-based conditions of confinement claim under § 1983); *Cann v. Hayman*, No. 07-2416, 2008 WL 2276006, at *6 (D.N.J. June 2, 2008) ("In sum, Plaintiff's Complaint states nothing more than the mere fact of Plaintiff's displeasure with being temporarily placed in the 'dry' cell.  Such allegations, however, cannot amount to a cognizable constitutional claim, and will be dismissed."), *aff'd*, 346 F. App'x 822 (3d Cir. 2009).

### i.  Reeves' claims of verbal harassment are not actionable under § 1983

Reeves alleges that he was taunted and teased by various defendants during his dry cell

experience on July 9, 2018. He claims Officer Hajen screamed at him to "fucking shut up" because he was speaking too loudly when complaining to Nurse Mazzacca about being placed in the dry cell. (DE 3 at 8.) Reeves also alleges that Officer Thompson "made funny faces and taunted Mr. Reeves" and that this defendant and Nurse Mazzacca "made gestures towards him." (DE 3 at 9.) These factual allegations, even if true, do not support a claim under § 1983.

"Generally, mere verbal harassment does not give rise to a constitutional violation." *Belt*, 336 F. Supp. 3d at 437 (collecting cases); *see also McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) (vulgar language); *Rivera v. Goord*, 119 F.Supp.2d 327, 342 (S.D.N.Y. 2000) (verbal harassment does not violate inmate's constitutional rights); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 187-189 & n.3 (D.N.J. 1993) (corrections officer's use of racial slurs did not amount to constitutional violation); *Murray v. Woodburn*, 809 F. Supp. 383 (E.D. Pa. 1993); *Douglas v. Marino*, 684 F. Supp. 395 (D.N.J. 1988). The alleged gestures and other verbal harassment that Reeves complains about are not actionable under § 1983. Consequently, any such harassment fails to support a cognizable § 1983 claim.

### j. Reeves' claims that his administrative grievances were destroyed, ignored, and/or mishandled do not support a viable § 1983 claim

Reeves claims that many of his complaints and grievances were ignored, destroyed, and/or otherwise inadequately addressed by BCJ personnel. He, for example, alleges that Officer John Thompson destroyed five separate grievances that Reeves submitted to him about the July 9th dry cell incident, as well as two other grievances that Reeves previously submitted to Thompson on July 1, 2018 "about poor medical services." (DE 3 at 9.) He further claims that Thompson and Sergeant Romero ignored him on July 2, 2018 when he, for unspecified reasons, requested their help. (*Id.*) Reeves alleges that when he complained to Dr. Hemsley, directly, about the July 9th

dry cell incident, he was ignored.  (*Id.*)  Reeves also appears to take issue with Warden Ahrendt's referral of his October 8, 2018 claim "involving [Hemsley and Nurse Melson's purported falsification] of medical records and forgery" to BCJ's Internal Affairs department "for investigation and appropriate action."  (*Id.* at 6.)  These allegations do not support a viable § 1983 cause of action.

Prisoners do not have a constitutionally protected right to a prison grievance process.  *Belt*, 336 F. Supp. 3d at 436; *see also Davis v. New Jersey Dep't of Corr.*, No. 17-6898, 2018 WL 4179462, at *9 (D.N.J. Aug. 31, 2018) ("Defendants' failure to properly respond to and process Plaintiff's administrative grievances is not actionable under § 1983"); *Pressley v. Johnson*, 268 F. App'x 181, 184 (3d Cir. 2008) ("Because there is no due process right to a prison grievance procedure, [the plaintiff]'s allegations [about the investigation and processing of his inmate grievances] did not give rise to a Fourteenth Amendment violation"); *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) ("[Prison officials'] alleged obstruction of prison grievance procedures does not, by itself, state a claim [under § 1983]"); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005).

The Court emphasizes that prisoners *do* have a constitutional right to access to the courts, in limited circumstances.  *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (per curium) ("prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement."); *Aulisio v. Chiampi*, 765 F. App'x 760, 763 (3d Cir. 2019) (same).  To sustain such a claim, Reeves must plead sufficient facts demonstrating that his "efforts to pursue a legal claim" were prejudiced.  *Bowens v. Matthews*, 765 F. App'x 640, 643 (3d Cir. 2019) (citing *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996))).  Moreover, when a plaintiff alleges the loss

of an opportunity to present a past legal claim, the underlying claim must be "nonfrivolous" or "arguable," and the plaintiff must "have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe*, 536 F.3d at 205 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). The complaint "must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205-06 (citing *Christopher* at 416-17).

The facts alleged in Reeves' amended complaint fail to plausibly suggest that his right of access to the courts has been compromised under the foregoing standard. Again, Reeves' appears to claim only that his administrative grievances have been ignored, mishandled, and/or destroyed. The right of access to the courts is not compromised by the failure and/or refusal of prison officials to address an inmate's administrative grievances. *Allah v. Thomas*, 679 F. App'x 216, 218-19 (3d Cir. 2017) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Thus, any attempt by Reeves to establish liability against defendants based upon their purported mishandling of his prison grievances, standing alone, does not give rise to a constitutional claim. *See Stringer v. Bureau of Prisons*, 145 F. App'x 751, 753 (3d Cir. 2005) (a failure to respond to an inmate's grievances "does not violate his rights to due process and is not actionable"); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

### k. Reeves' retaliation claim is dismissed

Reeves alleges that he was moved from BCJ's low security South 7 dorm to its high security South 4 dorm in retaliation for filing a July 26, 2018 grievance complaining about "cover-ups in the medical department." (*Id.* at 9.) Because Reeves' complaints about BCJ's medical staff are protected by the First Amendment, he may have a viable claim under § 1983 if he were

moved to a maximum-security wing in BCJ in retaliation for complaining about his medical treatment. *Smith v. Merline*, 797 F. Supp. 2d 488, 504 (D.N.J. 2011). This claim for § 1983 retaliation will be permitted to proceed if he pleads sufficient facts demonstrating:

> (1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline him.

*Alexander v. Fritch*, 396 F. App'x 867, 871 (3d Cir. 2010) (internal citations omitted).

The Court dismisses Reeves' § 1983 retaliation claim because he has failed to plead sufficient factual allegations. He has not identified any particular defendant who is responsible for this action. In other words, there are no factual allegations which tie any particular defendant to the decision to transfer Reeves to a maximum-security unit. Reeves likewise fails to plead any fact which plausibly suggest that the constitutionally guarded conduct he engaged in, *i.e.*, complaining to BCJ staff about his medical treatment, was a motivating factor in his transfer. The Court will accordingly dismiss Reeves' § 1983 retaliation claim against all defendants, without prejudice, for failure to state a claim upon which relief can be granted. *See Aulisio v. Chiampi*, 765 F. App'x 760, 763 (3d Cir. 2019) (affirming award of summary judgment on retaliation claim where claim "failed to show that his constitutionally protected conduct was a motivating factor in the discipline.").

## VI.    CONCLUSION

For the reasons set forth herein, Reeves' application for the undersigned to recuse himself from this matter is denied. His motion to amend his pleading to assert new tort claims against ICE is also denied. Reeves' § 1983 deliberate indifference to medical needs against Nurse Scheidewig may proceed. Pursuant to 28 U.S.C. §§ 1915(e)(2)(B), the Court dismisses Reeves'

§ 1983, § 1985, and *Bivens* claims against ICE with prejudice.   This means that Reeves cannot

brings those claims again.   All other claims in Reeves' pleading are dismissed without prejudice

as against all other named defendants.   Reeves is provided forty-five (45) days to file an amended

complaint as to those claims dismissed without prejudice.[8]   If he fails to do so, then those claims

will also be dismissed with prejudice.   An appropriate Order accompanies this Opinion.


Date: June 20, 2019                                            s/ John Michael Vazquez
At Newark, New Jersey                                    JOHN MICHAEL VAZQUEZ
                                                                          United States District Judge

---

[8]   Reeves should note that when an amended complaint is filed, it supersedes the original and
renders it of no legal effect, unless the amended complaint specifically refers to or adopts the
earlier pleading.   *See West Run Student Housing Associates, LLC v. Huntington National Bank*,
712 F.3d 165, 171 (3d Cir. 2013)(collecting cases); *see also* 6 Charles Alan Wright & Arthur R.
Miller, Federal Practice and Procedure § 1476 (3d ed. 2008).   To avoid confusion, the safer
practice is to submit an amended complaint that is complete in itself.   Wright & Miller, *supra*, at
§ 1476.