<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL REEVES, | |
| Plaintiff, | Civil Action No. 18-14061 (JMV) (ESK) |
| v. | OPINION |
| COUNTY OF BERGEN, | |
| Defendant. | |

<u>**John Michael Vazquez, U.S.D.J.**</u>

Before the Court is Defendant[1] Bergen County's motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (D.E. 58.) Plaintiff filed an Opposition, (D.E. 61), and the County filed a Reply, (D.E. 62). For the following reasons, the Court will grant in part the County's motion and dismiss Plaintiff's claims under § 1985. The Court will deny the remainder of the County's motion.

**I.   BACKGROUND**[2]

As the parties are intimately familiar with the facts of this case, and because the Court has already set forth the background of this case in a number of Opinions, (D.E. 16, 37), the Court will only state those facts necessary to address the instant motion.

---

[1] The County is the sole remaining Defendant. Although the Court had allowed Plaintiff's claims to proceed against some individual Defendants, in their individual capacity, (D.E. 37), Plaintiff's Amended Complaint no longer asserts claims against those Defendants. (D.E. 57.)

[2] The Court will accept as true the well-pled factual allegations in the Complaint for the purposes of this Opinion only. The Court has made no findings as to the veracity of Plaintiff's allegations.

On June 25, 2018, Plaintiff arrived at the Bergen County Jail, shortly following a surgery for his dislocated right shoulder. (D.E. 57, at ¶ 21.) At the time of his admission, Plaintiff wore a sling from the surgery, but staff took away the sling and admitted him "with an injured and still healing shoulder." (*Id*. at ¶ 22.) A medical staff member met with Plaintiff several times between June 25 and June 29, 2018, where Plaintiff complained about the loss of his sling and that "he was in excruciating pain from his shoulder due to the injury and the sling getting confiscated." (*Id*. at ¶ 25.) The staff member refused to return the sling and advised that he could not examine the shoulder because he was not an orthopedic doctor and that the jail's insurance "was not going to be responsible." (*Id*. at ¶ 26.)

According to Plaintiff, it was the medical staff's practice "not [to] treat Plaintiff" in order "to avoid insurance liability" based on the arrangement the jail had to care for Immigration and Customs Enforcement ("ICE") detainees. (*Id*. at ¶ 27.) On June 29, 2018, Plaintiff was locked in a medical cell awaiting transport. (*Id*. at ¶ 29.) All of the medical staff had refused to touch Plaintiff, and when he questioned another medical staff member, she said that she could not touch his shoulder "due to insurance." (*Id*.)

Later that day, Plaintiff underwent a second surgery at an outside facility. The facility's surgeon operated on Plaintiff's shoulder and placed his arm back into a sling. (*Id*. at ¶ 30.) The surgeon also "ordered that the Plaintiff be returned in a few days, that he begin[] professional physical therapy and that he need[ed] further evaluation including a Magnetic Resonance Imaging on suspicion of a fractured shoulder." (*Id*.) The jail medical staff, however, ignored all of those orders for approximately eighty-two days, despite Plaintiff's numerous medical requests and grievances. (*Id*. at ¶¶ 30–34) During this time, Plaintiff's arm was left inside the sling in one position, which ultimately aggravated his injuries, "causing his shoulder to improperly heal,

disfigurement[,] and a frozen shoulder." (*Id*.)  Additionally, during that time period, Dr. Michael L. Hemsley, the jail's medical director, told Plaintiff "that the contract between the facility and ICE did not cover professional physical therapy," and that it was "'too expensive' and so his medical unit did not provide it." (*Id*. at ¶ 37).

It was not until Plaintiff filed a civil complaint, eighty-two days later, that staff returned Plaintiff for a follow-up. (*Id*. at ¶ 34.)  At that point, it was too late for Plaintiff's surgeon to perform any treatment or analysis of the condition without an MRI and professional physical therapy. (*Id*. at ¶ 38.)  The MRI later revealed that "Plaintiff's right shoulder was fractured, the bicep was torn, and that there was a Hill-Sachs deformity and [that] the shoulder had already healed improperly. It was also frozen." (*Id*. at ¶ 39.)

The surgeon advised Plaintiff that "that the injuries had become aggravated due to the delays caused by . . . Dr. Hemsley" and ignoring the surgeon's "multiple orders for professional therapy." (*Id*. at ¶ 40.)  The surgeon informed Plaintiff that he now had permanent injuries and that he would need to have a third surgery on his shoulder.  (*Id*. at ¶ 41).  The procedure would require breaking Plaintiff's shoulder again, and the surgeon warned that "he could not do the surgery or any additional treatments until the Plaintiff had professional physical therapy and was out of detention." (*Id*.)  "These harms would have been avoided" if Dr. Hemsley had not "improperly delayed . . . and interfered with medical treatment." (*Id*.)

Plaintiff alleges that the jail failed to intervene and refused to examine him as "part of a custom and practice by the Jail, in conjunction with its agreement with DHS/ICE, to avoid treating patients with certain injuries for insurance purposes and to keep costs as low as possible so as to reap a greater profit from the arrangement with DHS/ICE." (*Id*. at ¶ 28.)  Further, Plaintiff specifically alleges that "the medical staff's actions were . . . initiated . . . with an ulterior motive

3

to avoid any insurance liability, as well as minimize[] any cost, even when such a policy would guarantee harm for detainees." (*Id.*) Further this "was part of a custom and practice with an ulterior motive . . . so as to reap the fullest profit from Bergen County's [Intergovernmental Service Agreement] with DHS/ICE." (*Id.* at ¶ 29.) In particular, Dr. Hemsley's decision to delay and deny treatment "was not based on medical reasons but a desire to avoid the treatment due to cost." (*Id.* at ¶ 44.)

Plaintiff also alleges that the jail had a policy of failing to discipline staff who violated the rights of immigration detainees "because the understanding was that these people will be deported soon." (*Id.* at ¶ 52.) The jail set up these policies with "the understanding that most of the detainees were likely going to get deported and so it was somehow permissible to mistreat them, and that each detainee . . . would garner a certain per night dollar amount." (*Id.* at ¶ 53.)

Ultimately, Plaintiff contends that the "County, through its arrangement with ICE, developed, implemented, enforced, encouraged, and sanctioned a de facto policy, practice and/or custom of not providing basic medical care" to ICE detainees. (*Id.* at ¶ 59.) Due to this policy, practice, or custom, "the County received numerous complaints from detainees, family members of detainees, as well as had multiple protests outside its facility for human rights abuses . . . as to Bergen County's arrangement with DHS/ICE to house detainees at the Jail." (*Id.*) According to Plaintiff, prior to his admission to the jail, there "were numerous incidents, complaints, and lawsuits alleging human rights abuses just like Plaintiff's injuries." (*Id.* at ¶ 61.)

Additionally, Plaintiff contends that "[t]he County and employees, contractors, and agents of the Bergen County Jail, . . . engaged in a conspiracy to deprive detainees," of various constitutional rights. (*Id.* at ¶ 76.) Plaintiff alleges that the members of the conspiracy are

4

"[e]mployees, contractors, . . . agents of the County," and the "Bergen County Board of Commissioners." (*Id.* at ¶¶ 76–78.)

Plaintiff filed his initial complaint on September 19, 2018, and ultimately filed a counseled Fourth Amended Complaint (hereinafter "Complaint") in February of 2022. (D.E. 57.) The County filed a motion to dismiss the Complaint under Rule 12(b)(6), (D.E. 58), Plaintiff filed an Opposition, (D.E. 61), and the County filed a Reply, (D.E. 62).

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

"When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings." *Bermudez v. Blue Cross & Blue Shield of New Jersey*, No. 19-21637, 2020 WL 4188159, at *2 (D.N.J. July 21, 2020) (internal quotation marks omitted). "However, a court may consider documents that are 'integral to or explicitly relied upon in the complaint' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J. 2019) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)). "Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment," since a "plaintiff obviously is on notice of the contents [of] the document, and the need for a chance to refute evidence is greatly diminished." *Id.* (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993)) (internal quotation marks omitted).

### III. DISCUSSION

The County argues that the Complaint fails to state a claim against a local government entity under 42 U.S.C. §§ 1983 and 1985. More specifically, the County contends (1) that it cannot be held liable because the "County has no legal responsibility for the jail," and (2) Plaintiff has failed to plead sufficient facts to state a claim under § 1983 and § 1985. (D.E. 5-2, at 4, 16–19.)

As to 42 U.S.C. § 1983, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Com. of Pa.,* 36 F.3d 1250, 1255–56 (3d. Cir. 1994)). The Supreme Court has established that § 1983's definition of "person" includes municipalities and other local government entities. *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 690 (1978). A plaintiff may not, however, hold a local government unit "liable for

the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). Instead, to hold such an entity liable, a plaintiff must demonstrate that a local government unit adopted a policy or custom and that such policy or custom had been "the moving force" behind the deprivation of their constitutional rights. *See Monell*, 436 U.S. at 694.

Municipal policy generally requires that a local governing body's officers officially adopt and promulgate a "statement, ordinance, regulation, or decision." *Id.* at 690. A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691. Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" under § 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

## A. Whether the County has "Legal Responsibility" for the County Jail

The County first argues that it has "no legal responsibility" for anything that transpires at the Bergen County Jail. (D.E. 58-2, at 4–16.) The County appears to contend that it "has no responsibility or control over the operation of the jail or the supervision of its employees," and therefore, cannot be held liable under for events that occurred at the jail. The County alleges that

the Bergen County Sheriff "operates [the] county jail and supervises its employees," and maintains that it is "separate and distinct" from the sheriff and that the "sheriff is not a county employee." (*Id*. at 10)  As a result, the County suggests that the "legitimate parties" in this case, among others, are the sheriff and the warden. (*Id*. at 9.)  The Court disagrees.

The County's liability is not dependent on whether the County or the sheriff was directly in charge of the jail, or whether the sheriff and the County are distinct entities in some respects. Section 1983 does not make such a distinction. *See, e.g.*, *R.M. v. Sainato*, No. 11-1676, 2012 WL 1623860, at *3 (D.N.J. May 9, 2012); *Medina v. Cumberland Cnty.*, No. 11-905, 2011 WL 1750738, at *2 (D.N.J. May 3, 2011); *Crooks v. Passaic Cnty. Sheriff's Dep't/Jail*, No. 07-92, 2007 WL 923330, at *2 (D.N.J. Mar. 26, 2007).  Courts in this District have long held that a county is the proper party for the purposes of § 1983 because a sheriff's office is merely an administrative arm, executive arm, or sub-unit of its county. *E.g.*, *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *7 (D.N.J. May 5, 2015) (dismissing the Bergen County Sheriff's Office because it is not an entity separate and distinct from the County itself);  *Sainato*, 2012 WL 1623860, at *3 (dismissing the claims against the Morris County Sheriff's Office because it is "merely an administrative arm of the municipality itself"); *Franks v. Cape May Cnty.*, No. 07-6005, 2010 WL 3614193, at *7 (D.N.J. Sept. 8, 2010) (finding that "the Cape May County's Sheriff's Department is not a [distinct] legal entity"); *Jones v. Gloucester Cnty.*, No. 08-614, 2009 WL 10727989, at *6 (D.N.J. Sept. 30, 2009) ("[A] sheriff's office cannot be sued in conjunction with the county it serves, because it is not an entity separate from the county, but rather is merely an arm of the county."); *Caldwell v. Atl. Cnty. Animal Shelter*, No. 08-4101, 2009 WL 1173645, at *2 (D.N.J. Apr. 28, 2009) ("[A] County Sheriff's Department is not a legal entity distinct from the county."); *McLaughlin v. Cnty. of Gloucester*, No. 06-4494, 2008 WL 700125, at *2 (D.N.J. Mar. 12, 2008)

("In this case, because Plaintiff has named the County as a Defendant in this action, the Sheriff's Department, a branch of the County, cannot be sued as an individual entity."); *see also Hutchinson v. Bergen Cnty. Sheriff's Off.*, No. 22-993, 2022 WL 1639153, at *3 (D.N.J. May 24, 2022); *Pirrone v. Middlesex Cnty. Jail*, No. 14-2833, 2015 WL 1609708, at *2 (D.N.J. Apr. 10, 2015); *Araromi v. Middle Twp. Police Dep't*, No. 10-1048, 2014 WL 1301524, at *11 (D.N.J. Mar. 31, 2014); *DiPietro v. Gloucester Cnty. Sheriff's Dep't*, No. 11-5878, 2012 WL 3578133, at *1 (D.N.J. Aug. 20, 2012).

Nevertheless, the County relies on *Cunningham v. Cnty. of Bergen*, No. 19-6154, 2019 WL 6015478, at *3 (D.N.J. Nov. 14, 2019). In that case, the Court acknowledged that Bergen County and the Bergen County Sheriff are legally distinct entities[3] and that the "County does not operate the Bergen County jail and [that] the County is not a custodian of prisoners there—the Sheriff is." *Id*. at *2. The Court emphasized that under New Jersey law, "the sheriff of every county shall have the care, custody and control of the county jail or jails and all prisoners therein, and shall be responsible for the conduct of any keeper appointed by him," and that the "Sheriff, not the County, selects the jail's warden and . . . officers." *Id*. (quoting N.J.S. § 30:8-17 and citing N.J.S. §§ 30:8-17.1, 40A:9-117). The court concluded that state law did not vest "the county with any meaningful policymaking authority over county jails." *Cunningham*, 2019 WL 6015478, at *3. As a result, the Court held that Bergen County cannot be held liable under *Monell* for events that had occurred at the Bergen County Jail. *Id*. *Contra Sainato*, 2012 WL 1623860, at *3 (dismissing the claims against the Morris County Sheriff's Office because it is "merely an administrative arm of the municipality itself").

---

[3] *Compare* N.J.S. § 40:18-1 ("The inhabitants of each of the several counties shall be a body politic and corporate"), *with* New Jersey Const., Art. 7, § 2, ¶ 2 ("[S]heriffs shall be elected by the people of their respective counties at general elections").

The Court disagrees with *Cunningham*. Under *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 789 (1997), the Supreme Court indicated that courts must consider whether the official is acting "on behalf of the State, rather than the county," when acting in a particular area or capacity. *McMillian*, 520 U.S. at 789. There are two guiding principles in this analysis. *Id*. at 785. First, the question "is not whether [the] Sheriff . . . acts for" the State or the county "in some categorical, 'all or nothing' manner." *Id*. Rather, courts "must ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *Id*. Second, the "inquiry is dependent on an analysis of state law." *Id*. at 786. ("[O]ur understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.").

During its analysis of New Jersey law, the *Cunningham* court correctly noted that Bergen County and its sheriff are distinct entities in some respects, and that the sheriff manages the county jail and the hiring of the jail's employees. *Cunningham* however, did not consider for whom the sheriff undertake these duties—the state or the county. New Jersey law reveals that it is the county.

Starting first with the State Constitution, the "sheriff's office is referred to by name in the [New Jersey] Constitution only in connection with the manner of his election (by the people of the county at general election) and the term of office (three years)." *Application of Burlington Cnty. Bd. of Chosen Freeholders*, 491 A.2d 631, 635 (N.J. 1985) (citing N.J. Const. of 1947, art. 7, § 2, ¶ 2). Yet, the constitutional provision does not mean that a county sheriff cannot, "for purposes of the statute under review, be considered a part of the county structure, or that he must be looked upon as a state employee exclusively. As with other officials, the sheriff may serve two masters, depending on what function he is performing." *Id*. After reviewing the enabling legislation[4]

---

[4] As the Supreme Court of New Jersey observed:

pertaining to sheriffs, the Supreme Court of New Jersey found that, as a general matter, "[t]he legislature's system of referring to the office of sheriff lends support to the conclusion that the sheriff can indeed be . . . a part of the county government." *Id*. at 636.  *See also Sullivan v. McOsker*, 86 A. 497, 498 (N.J. 1913) (ruling, under the pre-1947 New Jersey Constitution, that the common jail of a county is not a private institution, but is . . . 'a county institution, and the burden of its maintenance has always rested upon the county.'").

Additionally, other indicia support the notion that a sheriff is a county actor in this context:

> His [minimum[5]] salary is fixed by the Legislature and paid by the county. N.J.S.A. 40A:9-104. . . . Under N.J.S.A. 22A:4-17, all

---

> The enabling legislation pertaining to sheriffs is found in Laws of 1971, chapter 200, the preamble of which identifies the enactment as "[a]n Act covering county and municipal officers and employees * * *." Section B, entitled "Counties," contains the statutes concerning eligibility for the office of sheriff (codified at N.J.S.A. 40A:9–94); the sheriff's oath (N.J.S.A. 40A:9–96); the effect of the failure of the sheriff-elect to qualify (N.J.S.A. 40A:9–101); vacancy in the office of sheriff (N.J.S.A. 40A:9–102); bond and oath of appointee to fill vacancy in the office of sheriff (N.J.S.A. 40A:9–103); salary of sheriff in certain counties (N.J.S.A. 40A:9–104); expenses payable to sheriffs (N.J.S.A. 40A:9–105); uncollected fees credited to account of former sheriff (N.J.S.A. 40A:9–106); sheriff to deliver to his successor certain moneys and papers (N.J.S.A. 40A:9–107); prohibition on sheriff holding other civil office (N.J.S.A. 40A:9–108); amercement of sheriff or acting sheriff (N.J.S.A. 40A:9–109); court-designation of enforcement officer when amercement occurs (N.J.S.A. 40A:9–110); and bonds taken by the sheriff (N.J.S.A. 40A:9–111).

*Burlington Cnty.*, 491 A.2d at 636.

[5] The amended statute provides that:

> The board of chosen freeholders in each county, by resolution, shall fix the annual salary of the sheriff in an amount equal to not less than sixty-five percent (65%) of the annual salary of a Judge of the Superior Court. Nothing in this section shall be construed to require that a sheriff whose annual salary exceeds the amount provided for

11

> monies received by the sheriff for services 'shall be for the sole use of the county and shall be accounted for regularly to the county treasurer.' The quarters in which the sheriff operates are supplied by the county and situate in the county. All of the funds necessary for the operation of his office are supplied by the county. N.J.S.A. 40A:9-105, 117.
>
> It is apparent that the sheriff's office is part of a 'local unit,' the county which that office serves.

*Application of Burlington Cnty. Bd. of Chosen Freeholders*, 457 A.2d 495, 499–500 (N.J. Sup. Ct. Law. Div.), *aff'd sub nom.*, 463 A.2d 351 (N.J. Sup. Ct. App. Div. 1983), *aff'd sub nom.*, 491 A.2d 631 (N.J. 1985).

As a result, when managing a county jail, the Court finds that a county sheriff can act as an actor and policymaker on behalf of the county. Similarly, the Court finds that the jail's medical staff, regardless of whether a county or a sheriff is their official employer, can be county actors for the purpose of demonstrating the existence of a municipal policy, practice, or custom under § 1983. Accordingly, the Court rejects the County's argument that, as a general principle, it cannot be held liable under § 1983 because "it has no legal responsibility for the jail." (D.E. 58-2, at 9.) As a result, the Court will deny the County's motion as to Point One.

The County next contends that Plaintiff failed to plead sufficient facts to state a claim under § 1983. However, the County only addressed one paragraph under the mistaken assumption that the actions and statements of the jail's employees could not demonstrate the existence of a

---

> herein shall be reduced, or that a board of chosen freeholders may not increase the salary of a sheriff in excess of the amount provided for herein.

N.J. Stat. § 40A:9-104.

municipal policy, practice, or custom under § 1983.[6] (D.E. 58-2, at 16–19.) Accordingly, the Court will deny the County's motion as to Point Two, as the County failed to address the majority of the factual allegations relevant to Plaintiff's § 1983 claims.

### B. Civil Conspiracy under 42 U.S.C. § 1985

The County further argues that Plaintiff has failed to plead sufficient facts to state a claim under 42 U.S.C. § 1985. As mentioned above, Plaintiff alleges that "[t]he County and employees, contractors, and agents of the Bergen County Jail, . . . engaged in a conspiracy to deprive detainees," of various constitutional rights. (D.E. 57, at ¶ 76.)

To state a claim for conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985(3), a plaintiff must establish the following:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons equal protection under the law or equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; and (4) injury to a plaintiff's property or his person, or deprivation of a right or privilege of a U.S. citizen.

*McArdle v. Hufnagel*, 588 F. App'x 118, 120 (3d Cir. 2014). Section 1985(3) actions are limited to conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Falat v. County of Hunterdon*, No. 12-6804, 2014 WL 6611493, at *13 (D.N.J. Nov. 21, 2014) ("The conspiracy must be directed at the plaintiff because he belongs to a given class."). "Additionally, a claim for conspiracy "must contain supportive factual allegations." *Harrold v. City of Jersey City*, No. 19-9566, 2020 WL 1444923, at *7 (D.N.J. Mar. 24, 2020) (internal quotation marks omitted). Mere conclusory

---

[6] The County correctly notes that it is not responsible for the actions of its employees or agents under a theory of *respondeat* superior. *Thomas*, 749 F.3d at 222. It can, however, be held liable for a municipal policy, custom, or practice, if it were "the moving force" behind the deprivation of Plaintiff's constitutional rights. *See Monell*, 436 U.S. at 694. And a county's employees or agents can certainly provide relevant evidence as to a county's policy, custom, or practice.

allegations that a conspiracy exists will not survive a motion to dismiss. *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 605 (D.N.J. 2002).

Even assuming that Plaintiff has otherwise pleaded a § 1985 claim, he fails to state a claim because the only alleged members of the conspiracy are "[e]mployees, contractors, . . . agents of the County," and the "Bergen County Board of Commissioners." (D.E. 57, at ¶¶ 76–78.) Under § 1985, "a plaintiff 'cannot maintain a conspiracy claim against' actors within the same municipal entity." *Bell v. Twp. of Maplewood*, No. 19-12980, 2021 WL 3260848, at *13 (D.N.J. July 30, 2021) (quoting *Baldwin v. Gramiccioni*, No. 16-1675, 2017 WL 120643, at *10 (D.N.J. Jan. 11, 2017) (collecting cases)). "Plaintiff cannot maintain a conspiracy claim against these actors because they are considered a single entity that cannot conspire with itself." *Baldwin*, 2017 WL 120643, at *10; *see Heffernan v. Hunter*, 189 F.3d 405, 412 n.5 (3d Cir. 1999) (noting that the intra-corporate conspiracy doctrine, which bars allegations of conspiracy between employees and within the same organization, "has also been carried over to alleged conspiracies involving governmental entities"); *Suber v. Guinta*, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012) (finding that "a municipality and its officials are considered a single entity which cannot conspire with itself"); *Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 246–47 (E.D.N.Y. 2009) (holding that "a corporation or public entity generally cannot conspire with its employees or agents as all are considered a single entity") (internal quotation marks and citation omitted).

Accordingly, the Court will grant Defendant's motion as to Point Three and dismiss Plaintiff's claims under § 1985.[7]

---

[7] The Court is granting Plaintiff leave to cure the deficiencies as to his § 1985 claims. The Court notes, however, that Plaintiff must plausibly plead the existence of a conspiracy and may not rely on conclusory allegations. Similarly, Plaintiff must plausibly plead the protected class.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part the County's motion to dismiss and dismiss Plaintiff's claims under § 1985. The Court will deny the remainder of the County's motion. An appropriate Order follows.

 9/8/2022
Date:                                           JOHN MICHAEL VAZQUEZ
                                               United States District Judge