<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL REEVES, | |
| Plaintiff, | Civil Action No. 18-cv-14061 (BRM) (ESK) |
| v. | **OPINION** |
| THE COUNTY OF BERGEN, et al., | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendant Morse Correctional Healthcare and Consulting, Inc., ("Defendant Morse") seeking to dismiss Michael Reeve's ("Plaintiff") claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 88.) Plaintiff filed his Opposition to Defendants' Motion. (ECF No. 90.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, the Motion to Dismiss is **GRANTED in part and DENIED in part**.

I. **BACKGROUND**[1]

Plaintiff filed his initial *pro se* complaint in September 2018, followed by a *pro se* amended complaint in October 2018. (*See* ECF Nos. 1, 2.) On June 20, 2019, after granting Plaintiff's application to proceed *in forma pauperis*, the Honorable John Michael Vazquez[2] screened Plaintiff's amended complaint for dismissal under 28 U.S.C. § 1915(e)(2)(B) and proceeded Plaintiff's Eighth Amendment deliberate indifference to medical needs claim against Defendant Nurse Karen Scheidewig. (ECF Nos. 16, 17.) Judge Vazquez dismissed with prejudice Plaintiff's claims against Immigration and Customs Enforcement i/p/a Immigration Customs Enforcement ("ICE") and his claim for violation of Health Insurance Portability and Accountability Act ("HIPPA"), and Plaintiff's other claims without prejudice. (*See id.*)

Plaintiff filed a *pro se* second amended complaint re-naming several dismissed defendants and adding multiple new defendants. (ECF No. 31.) Plaintiff's second amended complaint failed to name Defendant Nurse Karen Scheidewig. (*See id.*) In a February 19, 2020 Memorandum Order, Judge Vazquez provided Plaintiff with an opportunity to incorporate his previously proceeded claims against Nurse Karen Scheidewig into his second amended complaint. (*See* ECF No. 34.) Judge Vazquez also granted Plaintiff's motion to join the United States of America as a defendant and denied Plaintiff's motion to join the Essex Corrections and Officers Moses and Lopez. (*See id.*)

---

[1] For the purposes of this Motion to Dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in the facts alleged in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] On September 14, 2023, this matter was reassigned to the undersigned for all further proceedings. (ECF No. 98.)

On April 17, 2020, Plaintiff filed a third amended complaint. (ECF No. 35.) In March 2021, Judge Vazquez dismissed with prejudice Plaintiff claims against Bergen County Jail, Bergen County Jail Medical Center, and the individual defendants in their official capacities, and substituted the County of Bergen as the proper Defendant as to Plaintiff's claims. (*See* ECF No. 37.) Judge Vazquez also proceeded Plaintiff's claims against Defendants Warden Steven Ahrendt, Michael I. Hemsley, M.D., and Nurse Karen Scheidewig in their individual capacity. (*See id.*; *see also* ECF No. 47.)

On June 30, 2021, the Defendant County of Bergen filed a motion to dismiss. (ECF No. 48.) On November 29, 2021, attorney Jordan P. Brewster, Esq. entered his appearance on behalf of Plaintiff. (ECF No. 52.) Judge Vazquez terminated the motion without prejudice on January 6, 2022, and permitted Plaintiff to file an amended complaint. (ECF No. 55.)

On February 18, 2022, Plaintiff filed a counseled fourth amended complaint. (ECF No. 57.) Defendant County of Bergen filed a motion to dismiss. (ECF No. 58.) On September 8, 2022, Judge Vazquez granted the motion to dismiss in part, and dismissed only Plaintiff's claims under 42 U.S.C. § 1985. (*See* ECF Nos. 63, 64.)

On April 28, 2023, counsel for Defendant County of Bergen filed a letter stating that "initial written discovery has deemed it appropriate and necessary for Plaintiff to file an Amended Complaint asserting claims against Morse Correctional Healthcare, Inc., which was the County's medical vendor at the outset of Plaintiff's detention at the Bergen County Jail." (ECF No. 78.) A consent order signed by counsel for Defendant County of Bergen, counsel for Plaintiff, and Magistrate Judge Edward S. Kiel was filed on May 1, 2023, and permitted Plaintiff to file another a fifth amended complaint to add Morse Correctional Healthcare, Inc. as a defendant. (ECF No. 79.)

On May 16, 2023, Plaintiff filed the operative fifth amended complaint ("Complaint") naming Defendant County of Bergen and Defendant Morse Correctional Healthcare, Inc. as the only defendants. (*See* ECF No. 80.) Count three of the Complaint claims that Defendant Morse is liable to Plaintiff for negligent hiring, negligent retention, and negligent supervision. (*Id.* at 19-21.) Count five of the Complaint claims that Defendant Morse negligently and intentionally inflicted emotional distress. (*Id.* at 23–24.)

On June 25, 2018, Plaintiff arrived at the Bergen County Jail, shortly following a surgery for his dislocated right shoulder. (ECF No. 80 at ¶ 23.) The Complaint submits Defendant Morse was the medical vendor at Bergen County Jail on June 25, 2018. (*Id.* ¶ 27.) Dr. Michael Hemsley was employed by Defendant Morse until Defendant's contract with the jail expired on July 2, 2018. (*Id.*) After July 2, 2018, Dr. Hemsley was employed directly by Bergen County. (*Id.*) At the time of his admission, Plaintiff wore a sling from the surgery, but staff took away the sling and admitted him "with an injured and still healing shoulder." (*Id.* at ¶ 24.) A medical staff member met with Plaintiff several times between June 25 and June 29, 2018, where Plaintiff complained about the loss of his sling and that "he was in excruciating pain from his shoulder due to the injury and the sling getting confiscated." (*Id.* at ¶ 28.) The staff member refused to return the sling and advised that he could not examine the shoulder because he was not an orthopedic doctor and that the jail's insurance "was not going to be responsible." (*Id.* at ¶ 29.)

According to Plaintiff, it was the medical staff's practice "not [to] treat Plaintiff" in order "to avoid insurance liability" based on the arrangement the jail had to care for Immigration and Customs Enforcement ("ICE") detainees. (*Id.* at ¶ 30.) On June 29, 2018, Plaintiff was locked in a medical cell awaiting transport. (*Id.* at ¶ 32.) All of the medical staff had refused to touch

Plaintiff, and when he questioned another medical staff member, she said that she could not touch his shoulder "due to insurance." (*Id.*)

Later that day, Plaintiff underwent a second surgery at an outside facility. The facility's surgeon operated on Plaintiff's shoulder and placed his arm back into a sling. (*Id.* at ¶ 33.) The surgeon also "ordered that the Plaintiff be returned in a few days, that he begin[] professional physical therapy and that he need[ed] further evaluation including a Magnetic Resonance Imaging on suspicion of a fractured shoulder." (*Id.*) The jail medical staff, however, ignored all of those orders for approximately eighty-two days, despite Plaintiff's numerous medical requests and grievances. (*Id.* at ¶¶ 33–37.) During this time, Plaintiff's arm was left inside the sling in one position, which ultimately aggravated his injuries, "causing his shoulder to improperly heal, disfigurement[,] and a frozen shoulder." (*Id.*) Additionally, during that time period, Dr. Michael L. Hemsley, the jail's medical director, told Plaintiff "that the contract between the facility and ICE did not cover professional physical therapy," and that it was "'too expensive' and so his medical unit did not provide it." (*Id.* at ¶ 40.)

It was not until Plaintiff filed a civil complaint, eighty-two days later, that staff returned Plaintiff for a follow-up. (*Id.* at ¶ 37.) At that point, it was too late for Plaintiff's surgeon to perform any treatment or analysis of the condition without an MRI and professional physical therapy. (*Id.* at ¶ 41.) The MRI later revealed that "Plaintiff's right shoulder was fractured, the bicep was torn, and that there was a Hill-Sachs deformity and [that] the shoulder had already healed improperly. It was also frozen." (*Id.* at ¶ 42.)

The surgeon advised Plaintiff that "that the injuries had become aggravated due to the delays caused by . . . Dr. Hemsley" and ignoring the surgeon's "multiple orders for professional therapy." (*Id.* at ¶ 43.) The surgeon informed Plaintiff that he now had permanent injuries and that

5

he would need to have a third surgery on his shoulder. (*Id*. at ¶ 44.) The procedure would require breaking Plaintiff's shoulder again, and the surgeon warned that "he could not do the surgery or any additional treatments until the Plaintiff had professional physical therapy and was out of detention." (*Id*.) "These harms would have been avoided" if Dr. Hemsley had not "improperly delayed . . . and interfered with medical treatment." (*Id*.)

Plaintiff alleges that the jail failed to intervene and refused to examine him as "part of a custom and practice by the jail, in conjunction with its agreement with DHS/ICE, to avoid treating patients with certain injuries for insurance purposes and to keep costs as low as possible so as to reap a greater profit from the arrangement with DHS/ICE." (*Id.* at ¶ 31.) Further, Plaintiff specifically alleges that "the medical staff's actions were . . . initiated . . . with an ulterior motive to avoid any insurance liability, as well as minimize[] any cost, even when such a policy would guarantee harm for detainees." (*Id.*) Further this "was part of a custom and practice with an ulterior motive . . . so as to reap the fullest profit from Bergen County's [Intergovernmental Service Agreement] with DHS/ICE." (*Id*. at ¶ 32.) In particular, Dr. Hemsley's decision to delay and deny treatment "was not based on medical reasons but a desire to avoid the treatment due to cost." (*Id*. at ¶ 47.)

Plaintiff also alleges that the jail had a policy of failing to discipline staff who violated the rights of immigration detainees "because the understanding was that these people will be deported soon." (*Id*. at ¶ 55.) The jail set up these policies with "the understanding that most of the detainees were likely going to get deported and so it was somehow permissible to mistreat them, and that each detainee . . . would garner a certain per night dollar amount." (*Id*. at ¶ 56.)

Ultimately, Plaintiff contends that the "County, through its arrangement with ICE, developed, implemented, enforced, encouraged, and sanctioned a de facto policy, practice and/or

custom of not providing basic medical care" to ICE detainees. (*Id*. at ¶ 62.) Due to this policy, practice, or custom, "the County received numerous complaints from detainees, family members of detainees, as well as had multiple protests outside its facility for human rights abuses . . . as to Bergen County's arrangement with DHS/ICE to house detainees at the Jail." (*Id*.) According to Plaintiff, prior to his admission to the jail, there "were numerous incidents, complaints, and lawsuits alleging human rights abuses just like Plaintiff's injuries." (*Id*. at ¶ 64.)

Additionally, Plaintiff contends that Defendant County of Bergen and Defendant Morse had a duty to properly ascertain employees' fitness, to professionally train employees, and to adequately supervise the employees, contractors, and agents, in its employ. (*Id.* at ¶ 88–90.) Plaintiff claims "[Bergen] County and Morse failed to properly determine the fitness of employees, contractors, and agents of the County employed in the County Jail, to be hired as employees, contractors, and agents of the County to work at the County Jail, employees, contractors, and agents of the County failed to properly train these employees, contractors, and agents to ensure they would not violate the civil rights of individuals, such as Plaintiff." (*Id.* ¶ 91.)

Plaintiff filed his initial complaint on September 19, 2018, and ultimately filed a counseled Fifth Amended Complaint in May of 2023. (ECF No. 80.) Defendant Morse filed the instant motion to dismiss the Complaint under Rule 12(b)(6) (ECF No. 88) and Plaintiff filed an Opposition (ECF No. 90). Defendant Morse argues Plaintiff's Complaint against them must be dismissed because (1) the claims against Defendant Morse are time-barred, and (2) the claims against them are also without sufficient specificity to pass muster under federal pleading standard. (*See generally* ECF No. 88-2.)

## II.    Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. County of Alleghany*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations. *Bell Atlantic v. Twombley*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculation level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 560 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a "probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]-'that the pleader is entitled to relief.'" *Id.* at 679. (quoting Fed. R. Civ. P. 8(a)(2)). The pleadings of *pro se* plaintiffs are liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must alleged sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### III. DECISION

Defendant Morse argues Plaintiff's common law tort claims against them must be dismissed. Defendant Morse argues count three, negligent hiring/training, retention, supervision, and count five, negligent and intentional infliction of emotional distress, must be dismissed because the claims are barred by the 2-year statute of limitations and are plead without sufficient specificity to pass muster under federal pleading standards. (*See* ECF No. 88-2.)

#### A. Whether the Statute of Limitations Bars Plaintiff's Claims Against Morse

Defendant Morse argues that Plaintiff's claims against Morse are barred by the statute of limitations. (*Id.* at 13–15.) Defendant Morse argues the limitations period was not tolled through fictitious entity practice because the latest operative pleading to include fictitious entities was the first amended complaint, filed on October 19, 2018, which Judge Vazquez dismissed as to all defendants except for Nurse Scheidewig on June 20, 2019. (*Id.* at 14–15.) Additionally, Defendant Morse argues Plaintiff has a duty to diligently identify unknown defendants after filing the first amended complaint, and he failed to do so. (*Id.* at 15.) Plaintiff has responded and argues the New Jersey Discovery rule tolled the statute of limitations. (ECF No. 90 at 4-8.)

Section 1983 borrows the applicable state's personal injury statute of limitations. *See Vickers v. Childs*, 530 F. App'x 104, 105 (3d Cir. 2013). In New Jersey, that statute of limitations for personal injury claims is two years. *See* N.J. Stat. Ann. § 2A:14-2(a). Under New Jersey law, negligence claims are also subject to a two-year statute of limitations, N.J. Stat. Ann. § 2A:14-2 ("Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of action shall have accrued."), which generally starts to run at the time of the alleged injury. *Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 479 (D.N.J. 2002).

Here, the latest possible date Plaintiff was aware of his injury was when he filed his initial complaint on September 19, 2018. Thus, the statute of limitations on Plaintiff's claims ran at the latest two years after that date, on September 19, 2020. Plaintiff filed the operative Complaint naming Defendant Morse as a Defendant on May 16, 2023, over two-and-one-half years outside of the two-year statute of limitations. Therefore, Plaintiff's claims against Defendant Morse are time-barred unless they relate back to September 19, 2018, the date Plaintiff filed his original Complaint.

### 1. Relation Back Under New Jersey's Fictious Party Rule and Discovery Rule

Federal Rule of Civil Procedure 15(c) governs relation back of amendments and provides that an amended pleading relates back to the date of the original pleading if relation back is allowed under the law that provides the applicable statute of limitations. Fed. R. Civ. P. 15(c)(1)(A). New Jersey law—which provides the applicable statute of limitations—allows relation back. *See* R. 4:26–4 ("[I]f the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification."); *see also Viviano v. CBS, Inc.*, 101 N.J. 538, 547, 503 A.2d 296

10

(1986) (observing that the fictitious defendant rule "suspends the statute [of limitations] when the plaintiff is unaware of the true identity of the defendant"). Federal courts within the Third Circuit have recognized that pursuant to Fed. R. Civ. P. 15(c), plaintiffs may avail themselves of New Jersey's fictitious defendant rule to toll the statute of limitations in tort actions. *See DeRienzo v. Harvard Indus.*, Inc., 357 F.3d 348 (3d Cir. 2004) (holding that plaintiff's amended complaint naming fictitious defendants related back to timely filing of an original complaint pursuant to Fed. R. Civ. P. 15 (c)).

New Jersey's fictitious party rule provides, in relevant part, that "[i]n any action . . . if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification." N.J. Ct. R. 4:26-4. Thus, the rule "allows a plaintiff to initially name a 'fictitious defendant' in place of an actual person . . . and subsequently amend the complaint to add a newly identified party even after the statute of limitations has expired." *Carroll v. SetCon Indus.*, No. 10-4737, 2011 WL 736478, at *3 (D.N.J. Feb. 22, 2011) (citing N.J. Ct. R. 4:26-4). Three elements must be met for Plaintiffs to invoke the fictitious party rule: "1) the complaint must contain a description sufficient to identify the defendant; 2) the plaintiff must have exercised due diligence to ascertain the defendant's true name before and after filing the complaint; and 3) application of the fictitious party [rule] must not prejudice the defendant." *Estate of Lowther v. City of Newark*, No. 13-7244, 2015 WL 13236826, at *2 (D.N.J. Nov. 6, 2015) (citing *Ortiz ex rel. Rivera v. City of Camden*, No. 11-2300, 2013 WL 1811895, at *3 (D.N.J. Apr. 2, 2013)).

Here, Plaintiff's first amended complaint was the last time Plaintiff names ABC Entities 1-10, which was filed on October 19, 2018. (ECF No. 3.) Although Plaintiff did name John Doe Doctor in his April 17, 2020, third amended complaint (ECF No. 35), Plaintiff described that

11

defendant as the "acting Medical Director, and acting Chief Medical Doctor." (*Id.* at 2.) While it does not appear to the Court that the fictious party rule safeguards Plaintiff's claims against Defendant Morse, the Court need not conclusively make that determination, as the application of the New Jersey discovery rule has tolled the statute of limitations on Plaintiff's claims against Defendant Morse.

New Jersey's discovery rule may toll the statute of limitations on a claim "when injured parties reasonably are unaware that they have been injured or, although aware of an injury, do not know that the injury is attributable to the fault of another." *Fuqua v. Bristol-Myers Squibb Co.*, 926 F. Supp. 2d 538, 545 (D.N.J. Feb. 15, 2013) (quoting *Baird v. American Med. Optics*, 155 N.J. 54, 713 A.2d 1019, 1025 (N.J. 1998)). In such a scenario, "the statute of limitations begins to run when the plaintiff is aware, or reasonably should be aware, of facts indicating that she has been injured through the fault of another, not when a lawyer advises her that the facts give rise to a legal cause of action." *Baird*, 713 A.2d at 1026; *see also Cruz v. City of Camden*, 898 F. Supp. 1100, 1113-14 (D.N.J. 1995). This rule is "essentially a rule of equity," and "[d]etermining whether it applies requires identification, evaluation, and weighing of the equitable claims of the parties." *Lewis*, 2010 WL 1371939, at *5 (quoting *Abboud v. Viscomi*, 111 N.J. 56, 543 A.2d 29, 32 (N.J. 1988)) (internal quotations omitted).

Here, Plaintiff argues the discovery rule applies to his claims against Defendant Morse. While Plaintiff filed his initial complaint in September 2018, Plaintiff argues he was not aware until March 2023 that Defendant Morse was the employer of Dr. Hemsley and had placed the doctor at Bergen County jail. Plaintiff submits that once discovery began, Defendant County of Bergen informed Plaintiff that Defendant Morse had employed Dr. Hemsley for a portion of the time relevant to Plaintiff's injuries. (ECF No. 90 at 5-6, citing Att. 1, Certification of Jordan P.

Brewster, Ex. D at 43 (3/30/2023 email from counsel for Bergen County alerting Plaintiff to Morse for the first time).)

Defendants contend that Defendant Morse employed Dr. Hemsley at Bergen County Jail from July 1, 2017 through June 30, 2018. (ECF No. 88-2 at 5.) Defendant Morse's contract with Bergen County Jail was terminated on June 30, 2018. (*Id.*) On July 1, 2018, Bergen County Medical Center took over as medical provider at the jail, and as employer of Dr. Hemsley. (*Id.*) Plaintiff entered Bergen County Jail on June 25, 2018. Therefore, Defendant Morse was the employer for Dr. Hemsley during a portion of the relevant time period here, June 25, 2018 through June 30, 2018.

At the time Plaintiff filed his initial complaint in September 2018, Defendant Morse was no longer contracted with Bergen County Jail and no longer employed Dr. Hemsley. Plaintiff's first amended complaint named Bergen County Medical Center. (*See* ECF No. 3.) Defendant Morse argues that Morse's contract with Bergen County Jail was a public contract, which was available to the public, and could have been discovered Plaintiff earlier. However, at the time Plaintiff filed his initial complaint he was *pro se* and Dr. Hemsley was employed by Bergen County Medical Center. Plaintiff named Bergen County Medical Center as a defendant in his first amended complaint. There is nothing in the record to indicate that Plaintiff knew or should have known that Defendant Morse employed Dr. Hemsley for a five-day period when Plaintiff was initially injured. The medical records that Plaintiff attached to several of his amended complaints do not refer to Defendant Morse. Considering Plaintiff's initial *pro se* status and the fact that Plaintiff filed his counseled fifth amended complaint within a month of being notified of the existence of Defendant Morse by Defendant County of Bergen, the Court applies the New Jersey discovery rule to Plaintiff's claims against Defendant Morse and finds those claims timely under that rule.

13

### B. Whether Plaintiff Fails to State a Claim for Relief

Defendant Morse next contends that the Complaint fails to state a claim against them. The Court considers whether each count against Defendant Morse states a claim below.

### 1. New Jersey State Law Negligent Hiring/Training/Supervision

In New Jersey, claims of negligent hiring, supervision or training are not forms of vicarious liability. *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019) (citations omitted). The elements of a negligent hiring claim include:

> (1) that the employer "knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) "that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury." *Di Cosala v. Kay*, 91 N.J. 159, 173, 450 A.2d 508 (1982).

*Id.* at 916. The elements of a claim for negligent supervision or training under New Jersey state law include "that (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages." *Id.*

Plaintiff alleges Defendant Morse was the medical vendor at Bergen County Jail on June 25, 2018. (ECF No. 80 at ¶ 27.) According to Plaintiff, it was the medical staff's practice "not [to] treat Plaintiff" in order "to avoid insurance liability" based on the arrangement the jail had to care for Immigration and Customs Enforcement ("ICE") detainees. (*Id.* at ¶ 30.) Dr. Hemsley, the jail's medical director, told Plaintiff "that the contract between the facility and ICE did not cover professional physical therapy," and that it was "'too expensive' and so his medical unit did not provide it." (*Id.* at ¶ 40.) Dr. Michael Hemsley was employed by Defendant Morse until Defendant's contract with the jail expired on July, 2018. (*Id.* at ¶ 27.)

Plaintiff specifically alleges that "the medical staff's actions were . . . initiated . . . with an ulterior motive to avoid any insurance liability, as well as minimize[] any cost, even when such a policy would guarantee harm for detainees." (*Id.* at ¶ 31.) The Complaint alleges Defendant "Morse failed to properly determine the fitness of employees, contractors, and agents of the County employed in the County Jail, to be hired as employees, contractors, and agents of the County to work at the County Jail, employees, contractors, and agents of the County failed to properly train these employees, contractors, and agents to ensure they would not violate the civil rights of individuals, such as Plaintiff." (*Id.* ¶ 91.)

The Court finds that Plaintiff has adequately pled a state law negligent hiring, training, supervision claim against Defendant Morse. Plaintiff alleges that medical staff were instructed not to provide medical care. Plaintiff alleges that Defendant Morse was the medical provider contracted with the jail during a portion of the relevant time period. Defendant Morse's motion to dismiss as to this point is denied.

### 2. Negligent and Intentional Infliction of Emotional Distress

Under New Jersey law, to make out a prima facie case of intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant acted intentionally; (2) the defendant's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; (3) that the conduct proximately caused the plaintiff emotional distress; and (4) the emotional distress was so severe that no reasonable person could be expected to endure it. S*egal v. Lynch*, 993 A.2d 1229, 1239 (N.J. Super. Ct. App. Div. 2010). The "severe emotional distress" contemplated by the fourth element "must be sufficiently substantial to result in either physical illness or serious psychological sequelae." *Turner v. Wong*, 832 A.2d 340, 348 (N.J. Super. Ct.

App. Div. 2003). "Mere allegations of . . . 'embarrassment' . . . are insufficient as a matter of law . . . ." *Id.*

Negligent infliction of emotional distress is "understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 561 A.2d 1122, 1128 (N.J.1989). To succeed, Plaintiff must prove the following: (1) "a duty of reasonable care" was owed by the defendant to the plaintiff, (2) that duty was breached, (3) the "plaintiff suffered severe emotional distress," and (4) the breach proximately caused Plaintiff's injury. *Russo v. Nagel*, 358 N.J. Super. 254, 817 A.2d 426, 435 (N.J. Super. Ct. App. Div. 2003). "[T]he emotional distress suffered by plaintiff must be so severe that no reasonable [person] could be expected to endure it." *Ingraham v. Ortho-McNeil Pharm.*, 422 N.J. Super. 12, 20 (N.J. Super Ct. App. Div. 2011).

Here, the Complaint fails to plead sufficient facts to plausibly demonstrate the Plaintiff suffered severe emotional distress to raise a IIED or NIED claim. For example, nothing that the Complaint alleges or pleads would permit the Court to infer reasonably that Plaintiff suffered emotional distress amounting to physical illness or serious psychological sequelae. *See Turner*, 832 A.2d at 348. Although the Complaint alleges that Plaintiff suffered physical injuries from the alleged lack of medical treatment, regarding mental injury Plaintiff alleges only that Defendant Morse's extreme indifference to Plaintiff's medical needs caused him "great distress." (ECF No. 80 at 23.) That allegation is insufficient as a matter of law to show severe emotional distress. Thus, Defendant Morse's motion to dismiss is granted as to this issue and Plaintiff's intentional infliction of emotional distress and negligent infliction of emotional distress against Defendant Morse are dismissed.

### IV. Conclusion

Based on the foregoing, Defendant Morse's motion to dismiss is **GRANTED in part and DENIED in part**. Plaintiff's count five for negligent and intentional infliction of emotional distress against Defendant Morse is dismissed without prejudice. An appropriate order follows.

        */s/Brian R. Martinotti*
        HON. BRIAN R. MARTINOTTI
        UNITED STATES DISTRICT JUDGE