**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL REEVES, | Civil Action No. 18-14061 (BRM) (SDA) |
| Plaintiff, | |
| v. | **OPINION** |
| THE COUNTY OF BERGEN, *et al.*, | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are the Motions for Summary Judgment by Defendants County of Bergen ("Bergen County") (ECF No. 127) and Morse Correctional Healthcare and Consulting Inc. ("Morse") (ECF No. 129) filed pursuant to Fed. R. Civ. P. 56 and L. Civ. R. 56.1. Plaintiff Michael Reeves ("Plaintiff") filed an opposition (ECF Nos. 139, 141) and Defendants replied. (ECF Nos. 142, 143). Having reviewed and considered the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, Defendant Bergen County's Motion for Summary Judgment (ECF No. 127) is **GRANTED** as to Counts One, Two, and Seven of the Fifth Amended Complaint (ECF No. 80). Plaintiff's state law claims in Counts Three, Four, Five and Six are **DISMISSED WITHOUT PREJUDICE** as this Court declines to exercise

supplemental jurisdiction over those claims. Defendant Morse's Motion for Summary Judgment (ECF No. 129) is **DISMISSED AS MOOT**.

## I.    BACKGROUND

This action arises from the medical care Plaintiff received while detained at Bergen County Jail ("BCJ"). (*See generally* ECF No. 80.) During the relevant time period of June 2018 through October 2018, BCJ housed criminal prisoners and, through an agreement between Bergen County, Department of Homeland Security ("DHS"), and Immigration and Customs Enforcement ("ICE") BJC also housed immigration detainees. (Pl.'s Supp. Statement of Material Facts ("PSSOMF") (ECF No. 139-3) ¶ 3.) BCJ received a "flat fee amount and medical expenses needed to be cleared through ICE." (*Id.* ¶ 4.)

On June 25, 2018, Defendant Morse was the medical vendor at BCJ. (Fifth Am. Compl. ("FAC") (ECF No. 80) ¶ 27.) Defendant Morse's contract with BCJ expired on June 30, 2018, and Corizon Health Services replaced Morse on July 1, 2018. (ECF No. 129-2 at 6.)

On June 15, 2018, Plaintiff was taken into custody by ICE officers. (Def. Bergen County's Statement of Undisputed Material Facts ("DSOMF") (ECF No. 127-2) ¶ 1.) Plaintiff's right shoulder was injured while he was being taken into custody, resulting in a dislocation and requiring a medical procedure. (*Id.* ¶ 2.) Following that initial surgery, Plaintiff was transported to BCJ where he was detained beginning on June 25, 2018. (*Id.* ¶ 3; Pl.'s Resp. Statement of Undisputed Material Facts ("PSOMF") (ECF No. 139-2) ¶ 3.)

Plaintiff remained in BCJ's medical unit from June 25, 2018 to June 29, 2018, when he was discharged to general population. (DSOMF ¶ 4 (ECF No. 129-9) at 71–72.) Defendant Bergen County submits that while Plaintiff remained in the medical unit from June 25, 2018 to June 29, 2018, he complained only of stomach pain and constipation, citing to the relevant medical records

from that time. (DSOMF ¶ 4.) Plaintiff submits that he "consistently complained of shoulder injuries" while in the medical unit. (PSOMF ¶ 4.)

On June 29, 2018, after his release to general population, the records indicate that Plaintiff "reported shaking hands with another inmate and feeling two clicks" and Plaintiff re-dislocated his shoulder. (DSOMF ¶ 6.) Plaintiff denies this, submitting that upon his arrival at BCJ's medical unit, Nurse Scheidewig confiscated his medically essential sling, labeling it as contraband, and failed to provide him with a new sling, resulting in Plaintiff's shoulder re-dislocating when he "simply nodd[ed] his head" at fellow detainees. (PSSOMF ¶¶ 9–10, 15.)

Following the re-dislocation of Plaintiff's right shoulder, Plaintiff had a second closed reduction procedure, performed by Dr. Delany at New Bridge Medical Center on June 29, 2018. (DSOMF ¶ 7, PSOMF ¶ 7, PSSOMF ¶ 16.) Dr. Delany instructed Plaintiff to remain in a sling, except for limited range of motion from the hand, wrist, and elbow only and to return to New Bridge Medical Center in two weeks. (DSOMF ¶ 8, PSOMF ¶ 8.) Physical therapy was not formally ordered at that time. (*Id.*) Upon his return to BCJ, Plaintiff was provided with a new sling that did not contain metal. (*Id.* ¶ 9.) Plaintiff remained in a sling until his return to Dr. Delaney eighty-two (82) days later, on September 17, 2018. (PSSOMF ¶ 19-20.) On October 15, 2018, Plaintiff returned to Dr. Delaney and a prescription for physical therapy was issued at that time. (DSOMF ¶ 11.) Although Plaintiff submits that physical therapy would have been prescribed sooner had Plaintiff returned to Dr. Delaney in a timely manner, the official prescription for physical therapy was issued on October 15, 2018. (PSOMF ¶ 11.) Dr. Michael Hemsley, BCJ doctor, ordered the physical therapy the same day. (DSOMF ¶ 11.)

In October 2018, Plaintiff was transferred to Essex County Correctional Facility. (*Id.* ¶ 12.)

Plaintiff filed his initial *pro se* complaint in September 2018, followed by a *pro se* amended complaint in October 2018. (*See* ECF Nos. 1, 2.) On June 20, 2019, after granting Plaintiff's application to proceed *in forma pauperis*, the Honorable John Michael Vazquez U.S.D.J. (ret.) ("Judge Vazquez")[1] screened Plaintiff's amended complaint for dismissal under 28 U.S.C. § 1915(e)(2)(B) and proceeded Plaintiff's Eighth Amendment deliberate indifference to medical needs claim against Defendant Nurse Karen Scheidewig. (ECF Nos. 16, 17.) Judge Vazquez dismissed with prejudice Plaintiff's claims against Immigration and Customs Enforcement i/p/a Immigration Customs Enforcement ("ICE") and his claim for violation of Health Insurance Portability and Accountability Act ("HIPPA"), and Plaintiff's other claims without prejudice. (*See id.*)

Plaintiff filed a *pro se* second amended complaint re-naming several dismissed defendants and adding multiple new defendants. (ECF No. 31.) Plaintiff's second amended complaint failed to name Defendant Nurse Karen Scheidewig. (*See id.*) In a February 19, 2020 Memorandum Order, Judge Vazquez provided Plaintiff with an opportunity to incorporate his previously proceeded claims against Nurse Karen Scheidewig into his second amended complaint. (*See* ECF No. 34.) Judge Vazquez also granted Plaintiff's motion to join the United States of America as a defendant and denied Plaintiff's motion to join the Essex Corrections and Officers Moses and Lopez. (*See id.*)

On April 17, 2020, Plaintiff filed a third amended complaint. (ECF No. 35.) In March 2021, Judge Vazquez dismissed with prejudice Plaintiff's claims against Bergen County Jail, Bergen County Jail Medical Center, and the individual defendants in their official capacities, and

---

[1] On September 14, 2023, this matter was reassigned to the undersigned for all further proceedings. (ECF No. 98.)

substituted the County of Bergen as the proper Defendant as to Plaintiff's claims. (*See* ECF No. 37.) Judge Vazquez also proceeded Plaintiff's claims against Defendants Warden Steven Ahrendt, Michael I. Hemsley, M.D., and Nurse Karen Scheidewig in their individual capacity. (*See id.*; *see also* ECF No. 47.)

On June 30, 2021, the Defendant County of Bergen filed a motion to dismiss. (ECF No. 48.) On November 29, 2021, attorney Jordan P. Brewster, Esq. entered his appearance on behalf of Plaintiff. (ECF No. 52.) Judge Vazquez terminated the motion without prejudice on January 6, 2022, and permitted Plaintiff to file another amended complaint. (ECF No. 55.)

On February 18, 2022, Plaintiff filed a counseled fourth amended complaint. (ECF No. 57.) Defendant County of Bergen filed a motion to dismiss. (ECF No. 58.) On September 8, 2022, Judge Vazquez granted the motion to dismiss in part and dismissed only Plaintiff's claims under 42 U.S.C. § 1985. (*See* ECF Nos. 63, 64.)

A consent order signed by counsel for Defendant County of Bergen, counsel for Plaintiff, and then-Magistrate Judge Edward S. Kiel was filed on May 1, 2023, and permitted Plaintiff to file a fifth amended complaint to add Morse Correctional Healthcare, Inc. as a defendant. (ECF No. 79.)

On May 16, 2023, Plaintiff filed the operative fifth amended complaint ("FAC") naming Defendant County of Bergen and Defendant Morse Correctional Healthcare, Inc. as the only defendants.[2] (*See* ECF No. 80.) On July 17, 2023, Morse filed a motion to dismiss the FAC. (ECF No. 88.) On December 8, 2023, the Court granted Morse's motion in part, dismissing without

---

[2] United States of America and Warden Steven Ahrendt were not named as defendants in Plaintiff's FAC. As such, the Court will instruct the Clerk of the Court to terminate them on the docket.

prejudice count five of the FAC for negligent and intentional infliction of emotional distress against Morse. (*See* ECF Nos. 105, 106.)

Plaintiff's remaining claims in the FAC are as follows: (1) a § 1983 *Monell*[3] claim against Bergen County (Count One); (2) a § 1983 supervisory liability claim against Bergen County arguing that the County knew or should have known that they failed to supervise employees (Count Two); (3) Negligent Hiring and Supervision claims against Bergen County and Morse (Count Three); (4) a New Jersey Civil Rights Act ("NJCRA") claim for subjecting him to cruel and unusual punishment for the deprivation of medical care against Bergen County (Count Four); (5) Intentional and Negligent Infliction of Emotional Distress claims against Bergen County (Count Five); (6) an Intentional Misconduct for denying medical care claim against Bergen County (Count Six); and (7) an § 1983 Eighth Amendment deliberate indifference claim against Bergen County (Count Seven). (*See* ECF No. 80.)

Defendants Bergen County and Morse have filed Motions for Summary Judgment. (ECF Nos. 127 and 129, respectively.) Plaintiff opposed the motions. (ECF Nos. 139, 141.) Defendants replied. (ECF Nos. 142, 143.) This matter is now ripe for consideration.

## II.   LEGAL STANDARD

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The mere existence of an alleged disputed fact is not enough. Rather, the opposing party must prove there is a genuine issue of a material fact. *Id.* An issue of material

---

[3] *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978).

fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.*

On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Therefore, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

Pursuant to Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1, where, as here, the moving party files a proper statement of material facts and the non-moving party fails to file a responsive statement of disputed material facts, this Court may treat the moving party's statement of material facts as undisputed and therefore admitted for the purposes of resolving the motion for summary judgment. *See, e.g., Ruth v. Sel. Ins. Co.*, No. 15-2616, 2017 WL 592146, at *2–3 (D.N.J. Feb. 14, 2017). Even where the defendants' statement of material facts is deemed admitted and unopposed, however, a district court is still required to "satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and that [the moving

party is] entitled to judgment as a matter of law" in order to grant summary judgment. *Id.* at 2

(citing *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).

### III.    DECISION

#### A. Deliberate Indifference under *Monell* and Supervisory Liability against Bergen County (Counts One, Two, and Seven)

Defendant Bergen County contends Plaintiff's Eighth Amendment deliberate indifference

to Plaintiff's medical needs claim under *Monell* and supervisory liability theories should be

dismissed, arguing that Plaintiff has failed to provide evidence to show that the County had a

practice, policy, or custom of providing inadequate, or depriving inmates of, medical care. (ECF

No. 127-3 at 5-14.) The Court agrees.[4]

Plaintiff raises a § 1983 *Monell* claim against Bergen County in Count One of the FAC. In

Count Two, Plaintiff raises a § 1983 supervisory liability claim against Bergen County arguing

that the County knew or should have known that they failed to supervise employees. Finally, in

Count Seven, Plaintiff raises an § 1983 Eighth Amendment deliberate indifference to Plaintiff's

medical needs claim against Bergen County. (*See generally* ECF No. 80.)

A municipality or municipal agency may be held liable under § 1983 only if its official

policy or custom causes a constitutional injury. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971

(3d Cir. 1996) (citing *Monell*, 436 U.S. at 658) ("When a suit against a municipality is based on

§ 1983, the municipality can only be liable when the alleged constitutional transgression

implements or executes a policy, regulation or decision officially adopted by the governing body

---

[4] Much of Plaintiff's opposition to summary judgment focuses on showing that Dr. Hemsley acted with deliberate indifference to Plaintiff's medical needs. (*See* ECF No. 139 at 24-27.) However, Plaintiff's FAC alleges claims against Bergen County, not Dr. Hemsley. Therefore, Plaintiff must show that Bergen County is liable under *Monell* through a policy or custom of the County. *See* 436 U.S. at 658.

or informally adopted by custom."). As Plaintiff can only hold Defendant Bergen County liable by showing a policy or custom, the Court addresses these three counts together.

Under the Eighth Amendment, prisoners must not be subject to "cruel and unusual punishment." Plaintiff, who is not a prisoner, is entitled to protection under the Fourteenth Amendment's Due Process Clause, which prevents pretrial detainees from being subjected to conditions that amount to punishment. *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). To establish a violation of the Fourteenth Amendment for "the right to medical care, an individual must allege (1) a serious medical need and (2) acts or omissions by individuals that indicate a deliberate indifference to that need." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (internal citations omitted). The Third Circuit has applied this standard to claims under both the Eighth and Fourteenth Amendments. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Assuming, *arguendo*, that Plaintiff's right to medical care was violated, Plaintiff has not shown that Defendant Bergen County is responsible for Plaintiff's injuries.

A defendant in a civil rights action must have personal involvement in the alleged wrongs in order to be held liable as federal civil rights law does not permit a defendant to be held liable solely on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). Claims against supervisory or municipal defendants thus generally require a plaintiff to plead facts showing that either a supervisor had actual knowledge of and acquiesced in an underling's wrongdoing, or the supervisor or municipal entity was responsible for a policy, practice, or custom which was the moving force behind the violation of the plaintiff's rights. *Chavarriaga*, 806 F.3d at 222-23; *see*

*also Los Angeles County v. Humphries*, 562 U.S. 29, 35-36 (2010); *City of Canton v. Harris*, 489

U.S. 378, 389 (1989); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

In *Monell*, the United States Supreme Court held that "when execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts the injury," the government as an entity is responsible. 436

U.S. at 694. But "[n]ot all state action rises to the level of a custom or policy. A policy is made

"when a decisionmaker possess[ing] final authority to establish municipal policy with respect to

the action issues a final proclamation, policy or edict." *Natale v. Camden Cnty. Corr. Fac.*, 318

F.3d 575, 584 (3d Cir. 2003) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). A

custom is an act "that has not been formally approved by an appropriate decisionmaker," but that

is "so widespread as to have the force of law." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty.*,

*Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).

> There are three situations where acts of a government employee may
> be deemed to be the result of a policy or custom of the governmental
> entity for whom the employee works, thereby rendering the entity
> liable under § 1983. The first is where "the appropriate officer or
> entity promulgates a generally applicable statement of policy and
> the subsequent act complained of is simply an implementation of
> that policy." *Bryan County*, 520 U.S. at 417 (Souter, J., dissenting).
> The second occurs where "no rule has been announced as policy but
> federal law has been violated by an act of the policymaker itself."
> *Id.* Finally, a policy or custom may also exist where "the
> policymaker has failed to act affirmatively at all, [though] the need
> to take some action to control the agents of the government 'is so
> obvious, and the inadequacy of existing practice so likely to result
> in the violation of constitutional rights, that the policymaker can
> reasonably be said to have been deliberately indifferent to the
> need.'" *Id.* at 417–18, (quoting *City of Canton, Ohio v. Harris*, 489
> U.S. 378, 390 (1989)).

*Natale*, 318 F.3d at 584. Additionally, "in the absence of an unconstitutional policy, a

municipality's failure to properly train its employees and officers can create an actionable violation

10

of a party's constitutional rights under § 1983." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citation omitted). However, a failure to train claim can only serve as the basis for a § 1983 liability when "the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *Id.* (citation omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* (citation omitted).

### 1. Unconstitutional Policy or Custom

In the FAC, Plaintiff alleges the BCJ medical staff's failure to adequately treat Plaintiff was based on a "custom and practice by the Jail, in conjunction with its agreement with DHS/ICE, to avoid treating patients with certain injuries for insurance purposes and to keep costs as low as possible so as to reap a greater profit from the arrangement with DHS/ICE." (ECF No. 80 ¶ 31.) Plaintiff claims that the "restrictions as to providing basic medical care to detainees are presumably geared toward lowering the cost of medical care for ICE and keeping the lucrative contract between the jail and ICE more enticing to ICE at the detriment of immigration detainees." (*Id.* ¶ 56.)

Defendant Bergen County argues Plaintiff fails to show Bergen County promulgated a policy instructing BCJ medical staff to provide ICE detainees with inadequate medical care to receive a greater profit in housing the detainees. The Court agrees. Plaintiff fails to point to any evidence of record to show that Bergen County had promulgated and implemented an explicit policy regarding denying ICE detainees adequate medical care based on the desire to receive a larger profit. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (finding a policy requires "an official proclamation, policy or edict by a decisionmaker possessing final authority").

In his opposition brief, Plaintiff does not explicitly argue that there is a disputed issue of material fact regarding whether Bergen County had a custom of failing to provide ICE detainees

11

with adequate medical care. However, the Court finds the evidence cited to by Plaintiff in the opposition fails to show a custom to support a *Monell* claim against Bergen County.

"Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) ("A custom . . . must have the force of law by virtue of the persistent practices of state [or municipal] officials." (internal quotation marks omitted)). Plaintiff argues that Warden Steven Ahrendt's deposition testimony shows that BCJ was paid by ICE per detainee that the jail housed and the per head amount was nonnegotiable. (ECF No. 139 at 10.) Plaintiff also submits that Warden Ahrendt testified that ICE paid for detainee's medical expenses. (*Id.*) Additionally, Plaintiff points to Warden Ahrendt's testimony that following bail reform, BCJ had fewer county inmates and had more open beds to house immigration detainees. (*Id.* at 27–28 (citing ECF No. 141-4 at 60).) However, Plaintiff offers no evidence or argument as to how this testimony shows that Bergen County had a custom of providing immigration detainees with inadequate medical care. The evidence addresses only the fact that BCJ was paid, through an agreement with DHS and ICE, to house, and care for, immigration detainees at the jail.

Plaintiff also argues his deposition testimony supports his position. Plaintiff argues that he testified that he heard "staff members speaking about denying care because of insurance and/or cost savings reasons." (*Id.* at 28.) In his deposition, Plaintiff testified that a nurse in the medical unit informed Plaintiff that she could not examine his shoulder because she was not an orthopedic doctor and that he would need to be sent to an orthopedist. (ECF No. 141-1 at 100–01.) Plaintiff's testimony that a nurse in BCJ medical unit informed him that his shoulder needed to be examined

by an orthopedist and not her, does not create an issue of material fact regarding whether Bergen

County had a custom of denying immigration detainees medical care for monetary gain.

### 2. Deliberate Indifference

Defendant Bergen County moves for summary judgment arguing Plaintiff fails to show

that the County acted with deliberate indifference. Plaintiff alleges Bergen County "engaged in a

past practice and policy of exhibiting deliberate indifference to complaints of constitutional

violations against its employees [and] contractors." (ECF No. 80 ¶ 65.) Plaintiff also claims Bergen

County "engaged in a policy, custom and practice of inadequate screening, hiring, retaining. . .

supervising its employees and contractors." (*Id.* ¶ 68.)

To plead a "failure to act affirmatively" claim, the plaintiff must allege facts showing "there

was an obvious and clear need for the affirmative promulgation of a new policy to address

deficiencies which, if left uncorrected, were so likely to cause a violation such as the one the

plaintiff suffered that the defendant in question can be said to have been deliberately indifferent to

the deficiency." *Young v. Monmouth Cnty.*, No, 24-4975, 2025 WL 354447, at *3 (D.N.J, Jan. 31,

2025) (citing *Chavarriaga*, 806 F.3d at 222–23; *Natale*, 318 F.3d at 584).

"Under *Monell*, deliberate indifference requires 'proof that a municipal actor disregarded

a known or obvious consequence of his action.'" *Hightower v. City of Philadelphia*, 130 F.4th 352,

357 (3d Cir. 2024) (citing *Bryan Cnty.*, 520 U.S. at 410). "Ordinarily, this means that a plaintiff

must show that '[a] pattern of similar constitutional violations' put the city on notice that, by failing

to act, it was being deliberately indifferent to inmates' rights." *Id.* (citing *Connick v. Thompson*,

563 U.S. 51, 62 (2011)); *see also Schlaybach v. Berks Heim Nursing & Rehabilitation*, 839 F.

App'x 759, 760 (3d Cir. 2021) (stating that the plaintiff must identify a specific policy or custom

of the municipality that amounts to deliberate indifference to constitutional rights and, in most cases, deliberate indifference requires the plaintiff to allege a pattern of similar past conduct).

Deliberate indifference can be premised on a municipality's failure to train, supervise, and discipline. To plead such a failure-to claim, a plaintiff must demonstrate that a city's failure "reflects a deliberate or conscious choice." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798-800 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). A "municipality's culpability is at its most tenuous where a claim turns on a failure to train," and will only be tenable where it is clear from the facts alleged that the failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (internal quotations omitted). This requires allegations sufficient to support an inference that the municipality or supervisor "disregarded a known or obvious consequence of [its] action," which requires actual or constructive notice of an obvious deficiency in its training programs and a "policy of inaction" in the face of that known deficiency. *Id.* "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train," as it is policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees" which is indicative of deliberate indifference. *Id.* at 62 (internal quotations omitted).

Here, Plaintiff's conclusory allegations that Bergen County failed to train and supervise the medical staff is not evidence sufficient to show that the County engaged in a policy of failing to adequately hire, supervise, and/or train the medical staff at BCJ. In support of his opposition to summary judgment, Plaintiff provides news articles to support his argument that Defendant Bergen County had a pattern of not addressing medical claims of detainees at BCJ. (ECF No. 27.) The

Court has reviewed these articles and finds they do not support Plaintiff's allegation that in June through October 2018, Bergen County was aware of immigration detainees being denied medical treatment. First, Plaintiff submits a letter to various individuals at BCJ addressing allegations of medical neglect. (ECF No. 141-4 at 124–36.). However, this letter is dated July 13, 2021, and discusses allegations from 2021, which is three years after Plaintiff's detention at BCJ and therefore does not support his allegations that the County was aware of deficient medical care in 2018. (*Id.*) Plaintiff also cites to a 2015 article titled "23 Hours in the Box," which address various concerns stemming from immigration detainees being held in solitary confinement and the conditions in solitary confinement. (*See* ECF No. 141-4 at 154–204.) Plaintiff's allegations here do not pertain to whether Bergen County was aware of negative effects of the use of solitary confinement for detainees.

The evidence produced by Plaintiff fails to create a material issue of fact regarding whether in 2018, Bergen County was aware that immigration detainees were receiving inadequate medical care and had a policy of failing to adequately train and supervise the medical staff at BCJ. The evidence is not sufficient to show an obvious need for further policies or training at the time Plaintiff was housed at BCJ. Plaintiff fails to show a "pattern of similar constitutional violations" that put Bergen County on notice that it was being deliberately indifferent to immigration detainees' rights to adequate medical care. *Connick*, 563 U.S. at 63. Plaintiff's deliberate *Monell* claim (Count One), supervisory liability claim (Count Two), and indifference claim (Count Seven) against Bergen County are dismissed with prejudice.

## B. Remaining State Law Claims

Plaintiff remaining claims all raise claims under New Jersey state law. In Count Three, Plaintiff argues a claim of negligent hiring and supervision against Bergen County and Morse.

15

Count Four raises a NJCRA claim against Bergen County for subjecting Plaintiff to cruel and unusual punishment. Counts Five and Six raise claims of intentional and negligent infliction of emotional distress and intentional misconduct against Bergen County. (*See generally* ECF No. 80.)

Pursuant to 28 U.S.C. § 1367(c)(3), where a district court dismisses all claims over which it has original jurisdiction, the court "may decline to exercise supplemental jurisdiction" over any pendent state law claims. The Third Circuit has long held that where all federal claims are "dismissed before trial, the district court must decline to decide the pendent state claims" absent sufficient affirmative justification for doing otherwise. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). As the Court will enter judgment in favor of Defendant Bergen County on Plaintiff's federal claims, the Court declines supplemental jurisdiction over Plaintiff's state law claims in Counts Three, Four, Five, and Six. Those claims are therefore dismissed without prejudice at this time.[5, 6]

## IV.    CONCLUSION

For the reasons expressed above, Defendant Bergen County's Motion for Summary Judgment (ECF No. 127) is **GRANTED** as to Counts One, Two, and Seven of the Fifth Amended Complaint (ECF No. 80). Plaintiff's state law claims in Counts Three, Four, Five and Six are **DISMISSED WITHOUT PREJUDICE** as this Court declines to exercise supplemental

---

[5] Because the Court declines to exercise supplemental jurisdiction over the only remaining claim against Defendant Morse (Count 3), Defendant Morse's Motion for Summary Judgment (ECF No. 129) is **DISMISSED AS MOOT**.

[6] To the extent Plaintiff wishes to pursue the state court claims, he may do so by filing a complaint in state court. Pursuant to 28 U.S.C. § 1367(d), the limitation period for Plaintiff's state law claims is deemed tolled for the time it was pending in this Court and for thirty days after the dismissal of this matter.

jurisdiction over those claims. Therefore, Defendant Morse's Motion for Summary Judgment

(ECF No. 129) is **DISMISSED AS MOOT**. An appropriate order follows.

Dated: December 10, 2025

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**